**FREESE LEASING, INC., Appellee,**

v.

**UNION TRUST AND SAVINGS BANK, STANWOOD, Iowa, Appellant.**

No. 2–58536.

Supreme Court of Iowa.

May 25, 1977.

John L. Kuehnle, of Sebesta & Kuehnle, Mechanicsville, and Ralph V. Harman, of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

Walter F. Rismiller, Tipton, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES, and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves the attempted enforcement of dragnet clauses in two real estate mortgages. The trial court held the clauses did not cover the indebtedness at issue. We affirm.

Plaintiff Freese Leasing, Inc. initiated this declaratory judgment action to obtain a determination of the balance secured by the two real estate mortgages.

One of the mortgages was on an apartment property. Kenneth E. Proesch and Grace E. Ford, who held title as tenants in common, borrowed $12,000 from defendant Union Trust and Savings Bank on March 23, 1967, and gave the bank a mortgage on the premises to secure the debt. Plaintiff purchased the property on contract March 10, 1969, subject to the mortgage. The mortgage and contract were each recorded shortly after they were executed.

The other mortgage was on a parcel of real estate with a commercial garage and house on it. Proesch held title individually. He borrowed $8,500 from the bank on May 20, 1968, and gave the mortgage to secure the debt. Then, on October 2, 1970, he sold the property to plaintiff on contract, subject to the mortgage debt which plaintiff assumed and agreed to pay. This mortgage and contract were also recorded shortly after their execution.

The mortgage instruments contained identical printed language. Each mortgage recited it was given in consideration of the contemporaneous promissory note "and in further consideration of future advancements by way of loans, overdrafts or otherwise * * *." Discharge of each mortgage was conditioned on payment of the note "together with all other indebtedness that may be now or hereafter owing jointly or individually by any of the said parties of the first part to the said party of the second part hereof, * * * whether on open account, promissory note or overdraft, or otherwise * * *." These provisions, called "dragnet clauses", were not discussed by Proesch and the bank in either transaction.

When the apartment property was mortgaged, Proesch had no other debt with the bank. However, he did owe the bank money other than on the apartment house loan at the time of the second mortgage transaction. For many years Proesch had been in the used car business, as a sole proprietor using the trade name "Kenny's Auto Sales." In connection with that business he borrowed money from the bank on numerous occasions. The bank maintained a separate liability ledger on those transactions, identifying the debtor as "Kenny's Auto Sales, Kenneth E. Proesch." The opening entry is dated April 23, 1968, and the balance at the

time of the second mortgage transaction was approximately $2890.

Whenever Proesch borrowed money for use in the used car business, he executed notes as "Kenny's Auto Sales by Kenneth E. Proesch." His arrangement with the bank was to leave motor vehicle titles with it to secure each note. A description of the motor vehicle was placed on the note. The bank would hold the title until the note was paid. Usually the note was paid when the vehicle was sold. Neither Proesch nor the bank is shown to have discussed the real estate mortgages at the time of these transactions. No reference to the real estate mortgages was placed on the notes. The bank did not loan Proesch any money after August 4, 1970. However, as of August 22, 1973, Proesch owed the bank $5,137.64 by reason of unpaid auto loans.

The bank was not shown to have had actual notice of Proesch's sale of the two parcels of real estate to plaintiff until September 28, 1971, more than a year after the last loan to Proesch was made, when plaintiff made a payment on the apartment note. In October 1972 plaintiff's bookkeeper asked the bank for "a breakdown on what was paid on principal and interest separately" from November 1, 1971 through October 1972. In response the bank president separately reported principal and interest paid on the original notes secured by the two real estate mortgages, also listing the balance on those notes as "Balance Garage & House" and "Apt. House—Balance." In November 1973 the bookkeeper asked what interest was paid from November 1972 through October 1973 and what the principal balance was "for each mortgage." In response the bank gave the interest paid and principal balance on the original notes. Neither response included any reference to the loans for the auto business.

In August 1973 the bank started an action against Proesch for the balance owed on the used car loans. The record does not show whether the bank contended before plaintiff brought the present declaratory judgment action that those notes were covered by the dragnet clauses of the real estate mortgages.

Proesch testified that he did not intend the real estate mortgages to be security for any debts other than the notes executed at the time they were given. No one testified to a contrary intention of the bank.

The trial court held the dragnet clauses did not bring the used car loans within the security of the two mortgages and entered judgment accordingly. The bank appealed.

■ I. A mortgage is subject to the principles of interpretation and construction which govern contracts generally. These principles are designed to assist in identifying the intention of the parties. See *First v. Byrne,* 238 Iowa 712, 715, 28 N.W.2d 509, 511 (1947). The object of interpretation is to learn the meaning of words used in the contract. The goal of construction is to determine the legal effect of those words. *Connie's Construction Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975).

■ In the present case the bank contends the trial court erred in admitting and considering extrinsic evidence bearing on the intention of the parties to the mortgage. In doing so, the bank cites the parol evidence rule, which forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement. We assume, without deciding, that the bank may invoke the rule here even though plaintiff was not a party to the mortgage. See *General Motors Acceptance Corporation v. Keil,* 176 N.W.2d 837, 842–843 (Iowa 1970).

■ We find no violation of the parol evidence rule. It does not come into play until by interpretation the meaning of the writing is ascertained. In searching for that meaning, extrinsic evidence is admissible to shed light on the situation of the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain. *Hamilton v. Wosepka,* 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967). The extrinsic evidence in this case was admitted and considered for that purpose. See Restatement (Second) of Con-

tracts § 228(1) (Tent. Drafts 1–7 Student Ed. 1973) ("Words and other conduct are interpreted in the light of all the circumstances * * *.").

■ II. When extrinsic evidence is susceptible to conflicting inferences, the task of resolving the conflict is for the trier of fact. The scope of our review of findings of fact depends on whether the matter is tried at law or equity. See *Connie's Construction Co., Inc. v. Fireman's Fund Ins. Co., supra.* Because the trial court made findings of fact based on extrinsic evidence in the present case, our review is affected by whether this declaratory judgment action was legal or equitable.

■ Whether a declaratory judgment action is legal or equitable is determined by examination of the pleadings, the relief sought, and the nature of the case. *Northern Natural Gas Company v. Forst,* 205 N.W.2d 692, 694 (Iowa 1973). This case concerns the bank's rights under two mortgages. The bank's right to enforce the mortgages is involved. Mortgage foreclosure proceedings are equitable. § 654.1, The Code. Therefore the present controversy involves equitable subject matter and was triable in equity. See *Wetzstein v. Dehrkoop,* 241 Iowa 1237, 1246–1247, 44 N.W.2d 695, 700 (1950). Our review of the facts in equity cases is *de novo.* We give weight to the trial court's findings of fact but are not bound by them. Our statement of the facts has been made with this principle in mind.

■ III. Dragnet clauses are not favored in equity. Our cases say they should be carefully scrutinized and strictly construed. *First v. Byrne, supra,* 238 Iowa at 716, 28 N.W.2d at 511, and citations. However, they have a proper and legitimate purpose in commerce. See *Brose v. International Milling Co.,* 256 Iowa 875, 129 N.W.2d 672 (1964).

■ IV. The bank contends its right to rely on the dragnet clauses is not affected by plaintiff's purchase of the mortgaged property. Plaintiff purchased the real estate subject to the terms of the mortgages.

It is a subsequent encumbrancer and its position is not aided by the fact its contracts with Proesch were recorded before at least some of the auto loans were made. The prevailing rule is that the prior mortgage is affected only by actual notice. Mere constructive notice of a later encumbrance will not defeat the priority of the lien for advancements made by a first mortgagee after the execution and recording of the subsequent encumbrance. *Everist v. Carter,* 202 Iowa 498, 210 N.W. 559 (1926); *Corn Belt Trust & Savings Bank v. May,* 197 Iowa 54, 196 N.W. 735 (1924). Plaintiff does not challenge this rule or its applicability.

In the present case plaintiff was unable to prove the bank had actual notice of its contracts until after the date of the latest advancement. The latest advancement by the bank to Proesch occurred August 4, 1970, and plaintiff was unable to show the bank had actual notice of its contracts before September 28, 1971.

■ V. The decisive issue is whether Proesch and the bank intended the subsequent advances for Proesch's used car business to be covered by the dragnet clauses of the two real estate mortgages. Our most recent statement of the controlling principle appears in *Brose v. International Milling Co., supra,* 256 Iowa at 879, 129 N.W.2d at 675:

> * * * We have said many times that such provisions are not favored and should be closely scrutinized, but [such a provision] will be enforced to the extent it appears to have been within the intent of the parties.

In *Brose* the mortgagee financed the mortgagor's turkey business. A mortgage containing a dragnet clause was one of a series of related transactions between the parties. In holding the clause included debts of the business other than the one incurred at the time the mortgage was executed, the court gave weight to the interrelationship of the obligations based on the parties' method of doing business.

No similar evidence of intent appears in the present case. Proesch testified the auto

loans were unrelated to the real estate mortgages and were not intended to be covered by them. The record does not show any auto loans had been made at the time of the first mortgage. Although loans had been made at the time of the second mortgage, no showing was made that they were discussed or considered when that mortgage was executed. In *First v. Byrne,* supra, this was a significant factor:

> We are left to assume the mortgage form was used without discussion of the particular clause in question and with no special regard having been given to its consequences—certainly with no express common intent or purpose as to the debt in question. 238 Iowa at 718, 28 N.W.2d at 512.

The bank relies solely on the language of the dragnet clauses. Such language is not conclusive of the intent of the parties. The issue is what they meant by what they said. *Hamilton v. Wosepka,* supra, 261 Iowa at 305, 154 N.W.2d at 167; *Hendricks v. Webster,* 159 F. 927, 930 (8 Cir. 1908) ("However broad may be the terms of a contract, it extends only to those things concerning which the parties intended to contract."); see Restatement (Second) of Contracts, supra, § 238, comment a. ("Interpretation of contracts deals with the meaning given to language and other conduct by the parties rather than meanings established by law. * * * [T]he operative meaning is found in the transaction and its context rather than in the law or in the usages of people other than the parties.").

No relationship was shown between the real estate and auto loans. The auto loans were recorded on a separate ledger. Proesch used his auto business trade name in signing the notes for those loans, and the bank used a similar designation in identifying the ledger entries. In responding to plaintiff's inquiry about the real estate mortgage debt, the bank on two occasions listed only the balances on the real estate notes. There is no indication the bank believed the auto loans were secured by the real estate mortgages until it encountered difficulty in collecting them.

The bank held titles to used cars to secure the auto loans. Of course, this does not preclude coverage of the same debt by the real estate mortgages. See *Brose v. International Milling Co.,* supra. However, the existence of independent security for the auto loans is among the factors to be considered in determining whether the bank intended the real estate mortgages to cover them.

Two cases from other jurisdictions bear strong analogy to the circumstances in this case. They are *Second National Bank of Warren v. Boyle,* 155 Ohio St. 482, 99 N.E.2d 474 (1951), and *Airline Commerce Bank v. Commercial Credit Corp.,* 531 S.W.2d 171 (Tex.Civ.App.1975).

In *Boyle,* the mortgagor executed a real estate mortgage containing a dragnet clause and signed it "Rita R. Boyle." Two years later she entered into a chattel mortgage with the Bank in obtaining a loan for her taxicab company. Security included 18 taxicabs. The promissory note on the chattel loan was signed in the company name. In holding the dragnet clause did not include the taxicab loan, the *Boyle* court said:

> While "Rita R. Boyle, d. b. a. Red Top Cab" who signed the note and chattel mortgage evidencing the 1948 loan, is the same person as "Rita R. Boyle, who signed the 1946 mortgage, the fact that the bank was satisfied to have her sign the 1948 note in a manner different from that in which she signed the 1946 mortgage, does tend to indicate that neither the bank nor the mortgagor recognized any connection between the 1948 note and the 1946 mortgage.

155 Ohio St. at 488–489, 99 N.E.2d at 478.

In *Airline* a deed of trust of Richard and Edith Bouchiloon and William and Shirley Bouchillon to the bank contained a dragnet clause. Shortly after it was executed, a secured note for $6,500 was executed "by Red's Coach Sales, a partnership and R. H. and W. R. Bouchillon as individuals" in renewal of a prior unsecured note. The trial court had held the renewal note was

not reasonably within the contemplation of the parties when the deed of trust was given, even though the original unsecured debt existed prior to its execution. The facts that separate ledgers were kept on the transactions and a security agreement was recited on the face of the subsequent renewal note were decisive on appeal:

This history of those two notes [the original unsecured note and the secured renewal note] was evidenced by Airline Bank's ledger card entitled "Red's Coach Sales." A separate ledger card entitled "W. R., R. H., Shirley Louis, Edith L. Bouchillon" was also introduced. That ledger card reflected Airline Bank's records of the $15,115.51 note, but did not mention either of the $6,500 notes recorded on the "Red's Coach Sales" card. Regardless of the capacity in which Richard and William Bouchillon signed the $6,500 note, we think the recitation of security agreements on the face of the note, coupled with Airline Bank's separate records of the two indebtednesses, was sufficient evidence from which the trial court could conclude that the $6,500 note was not contemplated by the parties as included by the deed of trust at the time it was executed· the record does not show as a matter of law that the deed of trust was intended to secure the $6,500 note. 531 S.W.2d at 175.

We believe the modern standard for ascertaining whether a dragnet clause includes a particular debt, as reflected in our *Brose* case and the *Boyle* and *Airline* cases, is aptly stated in *Emporia Bank and Trust Company v. Mounkes,* 214 Kan. 178, 184, 519 P.2d 618, 623 (1974):

* * * [I]n the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

We adopt this rule. See *Akamine & Sons, Ltd. v. American Security Bank,* 50 Hawaii 304, 312–313, 440 P.2d 262, 268 (1968).

Applying this standard in the present case, we reach the same conclusion as the courts in the *Boyle* and *Airline* cases. We hold the Proesch real estate mortgages were not intended to secure the bank's subsequent loans to him in connection with his used car business. The trial court was correct in entering declaratory judgment accordingly.

AFFIRMED.