**FARMERS TRUST AND SAVINGS BANK, Appellee,**

v.

**Ralph F. MANNING and Florence M. Manning a/k/a Florence Margaret Manning, Appellants.**

No. 65175.

Supreme Court of Iowa.

Oct. 21, 1981.

Robert W. Sackett and Rosemary Sackett of Sackett, Sackett, Hemphill & Howe, Spencer, for appellants.

Christopher A. Bjornstad and David A. Scott of Cornwall, Avery, Bjornstad & Scott, and Joel Greer of Greer, Nelson, Bertell, Montgomery & Barry, Spencer, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

LeGRAND, Justice.

This case arose when a twenty-year debtor-creditor relationship broke down. It was tried partially at law and partially in equity. The legal issues were determined by a jury and, with one exception, are not involved in this appeal. The equitable issues were tried to the court, and judgments were entered against defendants on a series of notes. The judgments also foreclosed several mortgages. Defendants appeal; we affirm in part and reverse in part.

Ralph F. Manning and Florence M. Manning (Mannings) are husband and wife. They are engaged in the business of raising poultry. For many years they had financed their operation with plaintiff, Farmers Trust and Savings Bank (bank). In 1977, the bank refused the Mannings further financing. They were then obligated to the bank on a series of notes, some executed by both Ralph and Florence and some by Ralph alone.

The circumstances which brought about this litigation began on May 24, 1976, when the Mannings executed a note for $69,000 secured by a mortgage on a seventy-nine-acre tract owned by them as tenants in common. The mortgage contained an open-end (or dragnet) provision which pledged the mortgaged property as security for additional advances up to a total of $100,000.

Following execution of the $69,000 note, Ralph alone borrowed additional sums over the next thirteen months on five notes in the respective amounts of $6,000, $5,000, $8,000, $9,000, and $3,000. These advances totaled $31,000 and were intended to reach the limit the bank had placed on the Mannings' credit.

These notes all carried a one-year maturity date and charged interest at 9 percent. None was signed by Florence nor did she know of them until later, although she testified she would have executed them if her husband had requested that she do so.

When the $5,000 note came due on August 30, 1977, Ralph presented two checks to the plaintiff, one for principal and one for interest. Delivery, however, was made on condition the bank would lend him money to cover them. The bank refused further financing and rejected the tender as made.

This suit was then instituted, and the bank invoked the acceleration clause of the mortgage permitting it to declare the entire amount of Mannings' indebtedness due in the event of default.

Mannings filed a counterclaim, alleging breach of contract in refusing them further credit and stating the bank's conduct was "outrageous and grossly negligent." These issues were tried to a jury, which denied the counterclaim. There is no appeal from that result except for one issue relating to instructions, which we discuss later. The equitable issues had been reserved for consideration by the court on the same record.

Based on that record, the trial court entered judgments against Ralph and Florence jointly on two separate notes in the amount of $101,700.62, plus interest and costs. The trial court also entered judgment against Ralph alone on six separate notes, in the amount of $72,576.89, plus interest and costs.

Although the issues are stated somewhat differently by the Mannings, the two determinative questions to be answered are (1) the effect of the Iowa Consumer Credit Code (ICCC) on the notes sued upon and (2) the construction to be given the open-end mortgage dated May 24, 1976.

In addition the Mannings assert one error in the trial of their counterclaim, claiming there was reversible error in the trial court's definition of line of credit. We first treat that issue briefly.

I. *Jury Instruction.*

The Mannings' counterclaim resulted in a verdict adverse to them. They complain about a jury instruction defining "line of credit." One witness distinguished "line of credit" (the amount available to a borrow-

er) from "credit line" (the amount actually borrowed). However, the terms were used interchangeably throughout the trial. The trial court did not distinguish between them in the instructions.

During its deliberations, the jury asked the trial court to define both terms. The court responded with a short supplemental instruction that there was no difference between the two "for the purposes of this case."

■ The Mannings did not object to the instructions as originally given nor to the supplemental instruction. They raise the issue for the first time on this appeal. It comes too late, and we decline to consider it. *Julian v. City of Cedar Rapids*, 271 N.W.2d 707, 708–09 (Iowa 1978); *Miller v. International Harvester Co.*, 246 N.W.2d 298, 301 (Iowa 1976); *Rush v. Sioux City*, 240 N.W.2d 431, 441 (Iowa 1976); Iowa R.Civ.P. 196. We affirm the judgment for the bank on the counterclaim, and we move to a consideration of the issues raised in connection with the judgments entered on the notes and mortgages.

## II. *Default in Payments.*

■ Although the Mannings concede they were in default long before trial, they argue the petition should have been dismissed because they were not in default when suit was started. This depends on whether Ralph made a valid tender of payment at the time the $5,000 note came due on August 30, 1977. The offer of payment by Ralph was coupled with a request that the bank advance him additional funds to cover the checks. He says the bank was obligated to do this by the terms of its commitment to lend him and his wife $100,-000. This is not true. If additional loans *were* made, the mortgage of May 24, 1976, was to secure them up to a total of $100,-000. However, the bank was not obligated to make any advances and could, as it in fact did, refuse further credit.

■ A tender must be absolute and unconditional. *Lyon v. Willie*, 288 N.W.2d 884, 894 (Iowa 1980). One who makes a tender may insist that the other party fulfill his or her contractual obligation without affecting the validity of the tender. *Id.* As we have already said that the bank need not extend Ralph additional credit to meet this obligation, the tender as made was conditional, and the bank was justified in refusing to accept it. As a result, the Mannings were in default when suit was brought.

## III. *Open-End Mortgage.*

The mortgage dated May 24, 1976, was an open-end or "dragnet" instrument, pledging real estate as security for future as well as present loans. The dragnet clause provided as follows:

This mortgage shall stand as security for said note, and for any and all future and additional advances made to the Mortgagors by the holder of said note in such amount or amounts so that the total of such future additional advances outstanding and unpaid at any one time shall not exceed $100,000.00 and Mortgagee is hereby given authority to make such future and additional advances to Mortgagors herein, upon their signed order or receipt, and secured as the original obligation herein.

The $31,000 difference between the original mortgage indebtedness of $69,000 and the total authorized indebtedness of $100,-000 was quickly exhausted by a series of notes executed by Ralph alone in amounts of $6,000, $5,000, $9,000, $3,000, and $8,000. (The $8,000 note was rejected by the trial court as not being properly executed. It is not involved in this appeal.)

The Mannings do not attack the validity of this mortgage as security for the $69,000 advanced at the time of its execution. They do, however, challenge the bank's claim that it also secures the series of notes later executed by Ralph but not by Florence.

The bank insists the mortgage should stand as security for loans made to *either* Ralph or Florence. The Mannings argue its terms limit it to those loans made to *both* of them. The trial court held the notes signed

by Ralph alone were secured by the open-end mortgage to the extent of his interest in the real estate, but that they did not encumber Florence's interest. We hold the trial court should have gone farther by saying the notes were not secured by the mortgage at all, even as to Ralph's interest.

■ Mortgages of the type here considered—dragnet mortgages—are valid but are not favored by the law. They are strictly construed against the mortgagee. *Freese Leasing, Inc. v. Union Trust and Savings Bank*, 253 N.W.2d 921, 925 (Iowa 1977). The instant mortgage was executed as the joint obligation of Ralph and Florence. It pledges real estate owned by them as tenants in common as security for future advances made to the *mortgagors* on *their* signed order or receipt. Nowhere does the instrument refer to advances made to only one of them.

The bank relies on *First v. Byrne*, 238 Iowa 712, 715, 28 N.W.2d 509, 511 (1947). If only the bank and Ralph were involved, *Byrne* might be controlling as it appears both of them intended these loans to be secured. *See Freese*, 253 N.W.2d at 926. However, we must consider, too, the rights of Florence; and when we do, *Byrne* supports the Mannings rather than the bank. In *Byrne* we said:

> The mortgagors owned the premises as tenants in common and the mortgage was specifically given to secure their joint note. The "dragnet" clause would, of course, be effective to make it secure other existing and future *joint* indebtedness of the mortgagors to the mortgagee. But its language is broader than that: " * * * shall stand as security for any other indebtedness * * * that the mortgagee may now hold or in the future * * acquire against the said mortgagors, *or either or any of them*."

Does this mean the interest of each in the mortgaged premises was intended to be absolutely pledged to secure existing and future debts of the other as well as his own? Or should it be construed to mean each mortgagor pledges his own undivided interest to secure his own indi-

vidual "other indebtedness" and in addition only such individual debts of the other (existing or future) as he may have knowledge of and consent to have included?

238 Iowa at 715, 28 N.W.2d at 511. Later in that opinion, we added this:

> We construe the "dragnet" clause to mean that each mortgagor pledged his undivided interest in the mortgaged premises to secure, in addition to the specifically named joint indebtedness: first, any other existing or future *joint* indebtedness of the mortgagors to the mortgagee; second, any other existing or future *individual* debt of the mortgagor whose interest is sought to be foreclosed upon; and third, any existing or future debt of the other mortgagor which was known to the one whose interest is sought to be held and by him consented to or acquiesced in as being included in the lien upon his interest.

> This construction is reasonable and in complete harmony with the language used, the conduct of the parties, and the circumstances as they existed at the time the mortgage was executed.

*Id.* at 720, 28 N.W.2d at 513.

The *Byrne* case is clearly distinguishable because in that case the mortgage expressly pledged the interest of each owner as security for future indebtedness of the mortgagors or either of them. Unlike *Byrne*, the instant mortgage contains no such language.

■ We recognize an owner of an interest in real estate as a tenant in common can encumber his separate interest without the consent of his co-tenant. 9 G. Thompson, *Real Property* § 4689 (1958); 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 102 (1965); 86 C.J.S. *Tenancy In Common* § 109 (1954). However, in the present case the bank is asserting a right under an instrument which does not permit the application of that rule. By its express terms, this mortgage provides it shall stand as security on loans made to *both* mortgagors.

Construing the terms of this instrument strictly against the bank, we hold the loans made to Ralph are not secured by the mortgage of May 24, 1976.

## IV. *ICCC Provisions.*

This case presents several questions under the Iowa Consumer Credit Code (ICCC) which necessitate separate discussion of the notes involved. All references are to the Iowa Consumer Credit Code as it existed under the 1977 Code. Legislative changes since that time may well affect some of the conclusions we reach.

The Mannings contend the loans were subject to the ICCC as consumer loans. We set out the relevant portion of section 537.-1301(15) defining a consumer loan:

15. *Consumer loan.*

a. Except as provided in paragraph "b", a "consumer loan" is a loan in which all of the following are applicable:

(1) The person is regularly engaged in the business of making loans.

(2) The debtor is a person other than an organization.

(3) The debt is incurred primarily for a personal, family, household or agricultural purpose.

(4) Either the debt is payable in installments or a finance charge is made.

(5) Either the amount financed does not exceed thirty-five thousand dollars, or the debt is not incurred primarily for an agricultural purpose and is secured by an interest in land.

b. A *"consumer loan"* does not include:

(1) A sale or lease in which the seller or lessor allows the buyer or lessee to purchase or lease pursuant to a seller credit card.

(2) A loan secured by an interest in land if the security interest is bona fide and not for the purpose of circumvention or evasion of this chapter and the finance charge does not exceed twelve percent per year calculated according to the actuarial method on the assumption that the debt will be paid according to the agreed terms and will not be paid before the end of the agreed terms.

The Mannings also contend this action was prematurely brought because no notice to cure was given. Section 537.5110, The Code 1977, provides in part as follows:

2. A creditor who believes in good faith that a consumer is in default may give the consumer written notice of the alleged default, and, if the consumer has a right to cure the default, shall give the consumer the notice of right to cure provided in section 537.5111 before exercising any right he may have to enforce.

. . . .

4. If the consumer has a right to cure a default:

a. A creditor shall not accelerate the maturity of the unpaid balance of the obligation, demand or take possession of collateral, otherwise than by accepting a voluntary surrender of it, or otherwise attempt to enforce the obligation until twenty days after a proper notice of right to cure is given.

■ Before discussing the applicability of the statutes to the present facts, we consider a procedural question upon which the parties were unable to agree. Each says it was the other's burden to prove that a notice had (or had not) been given. We hold the bank had the burden to prove that a notice to cure, if one was required, was given. *See Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct.App.1979); *cf. Herman Ford-Mercury, Inc. v. Betts*, 251 N.W.2d 492, 496 (Iowa 1977) (secured party must plead and prove notice under section 554.-9504(3), The Code.) A notice to cure is a condition precedent to bringing suit. Failure to comply is cause for dismissal of the action.

The bank argues *First Northwestern National Bank v. Crouch*, 287 N.W.2d 151 (Iowa 1980) established the rule that a defendant must raise failure to give a cure notice as an affirmative defense. We do not read *Crouch* that way. In *Crouch* the issue *was* raised by defendant, but nothing we said indicates it had to be. *Id.* at 152. The burden properly belongs on the one

seeking to enforce the obligation. *See Mosebach v. Blythe*, 282 N.W.2d at 759.

Apparently the trial court found the Mannings waived compliance with the notice provision. There is authority that one in whose favor a condition precedent exists may waive it. *Blythe*, 282 N.W.2d at 760; *H. L. Munn Lumber Co. v. City of Ames*, 176 N.W.2d 813, 816 (Iowa 1970). *But see* § 537.1107, The Code 1977 (waiver of ICCC terms and conditions). We need not decide if the Mannings could have waived their statutory right to notice, because we hold there was no waiver.

■ The question of waiver arises because the Mannings did not plead the bank's failure to give a notice to cure. The matter was, however, thoroughly inquired into at trial. The evidence of noncompliance (except as to one note referred to later) was undisputed. Mannings' failure to plead a matter which the bank had the burden to prove is not a waiver. We hold that the notice-to-cure statute was not complied with and that there was no waiver by the Mannings. We now consider how this conclusion affects the various obligations.

### V. *Judgments Against Both Ralph and Florence.*

■ The trial court rendered judgment against Ralph and Florence on two notes. One note, dated January 23, 1969, was in the original amount of $30,000. This instrument, executed prior to the effective date of the ICCC, is not subject to its terms. *Ipalco Employees Credit Union v. Culver*, 309 N.W.2d 484 (Iowa, 1981). We affirm the judgment on that note.

■ The other judgment against both Mannings jointly was based on a note in the amount of $69,000, dated May 24, 1976. It was secured by a mortgage on the seventy-nine-acre tract owned by Ralph and Florence as tenants in common. Both because the loan was for more than $35,000 and because it was secured by an interest in real estate, this obligation was not subject to ICCC provisions. § 537.1301(15)(a)(5). Judgment on this note was entered for $86,-

726.03, and the mortgage securing it was established as a first lien on the property pledged as security. That judgment is also affirmed.

### VI. *Judgment Against Ralph Manning Individually.*

The trial court rendered judgment against Ralph individually on six notes. We reverse on all but one of these obligations.

### a) *Note of July 25, 1977.*

■ This is the only note executed by Ralph individually upon which the bank was entitled to judgment. It was in the face amount of $24,110.00. Notice to cure was given as to this obligation. Originally the Mannings contended the notice was defective. However, this dispute appears to have been disposed of by stipulation. In any event the notice was adequate under *Citizens First National Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980), holding a notice may be sufficient even if not in strict compliance with statute.

Judgment was entered on this note for $14,345.58 plus interest and costs. That judgment is affirmed.

### b) *Note of March 14, 1977.*

■ On March 14, 1977. Ralph executed a note in the amount of $23,500, secured by approximately 10,000 pullets. No notice to cure was given prior to suit. The note was subject to the terms of the ICCC section 537.1301(15)(a), The Code 1977. (Now section 537.1301(14)(a), The Code 1981). The suit was therefore premature and should have been dismissed. §§ 537.5110–537.5111, The Code 1977.

### c) *Notes executed subsequent to May 24, 1976, which the bank claims are secured by open-end mortgage of that date.*

■ This concerns four notes listed in Division III and totalling $23,000. The bank asserts they were part of the May 24, 1976, transaction and are thus exempt from the provisions of the ICCC because the

amount of the loan exceeds $35,000 and because the notes are secured by an interest in real estate. § 537.1301(15)(a), The Code 1977. Earlier in this opinion we rejected this argument, holding these notes were not secured by the open-end mortgage of May 24, 1976. Each must be treated as a separate transaction.

These notes are subject to ICCC provisions, including the requirement that notice to cure be given prior to suit. Because the statutory notice was not given, the judgment against Ralph in the amounts $7,548.29 (note for $6,000 dated June 26, 1976); $5,358.03 (note for $5,000 dated August 30, 1976); $11,378.06 (note for $9,000 dated June 2, 1977); $3,773.97 (note for $3,000 dated June 27, 1977) should have been dismissed for plaintiff's failure to comply with the statute.

VII. *Summary.*

We affirm the judgment against Ralph Manning and Florence Manning in the amount of $14,974.59, plus interest from May 9, 1980, at 7 percent per annum, based on a note for $30,000 dated January 23, 1969, and the foreclosure of the mortgages securing that obligation as set out in the trial court decree. (Division V.)

We also affirm the judgment against Ralph Manning and Florence Manning in the amount of $86,726.03, plus interest from May 9, 1980, at the rate of 8¾ percent per annum, based on a note for $69,000 dated May 24, 1976, and the foreclosure of the mortgage securing that obligation as set out in the trial court decree. (Division V.)

We affirm the judgment against Ralph in the amount of $14,345.58 on his separate note of July 25, 1977 for $24,110. (Division VI(a).)

We reverse the judgment entered against Ralph on his other five separate notes. Division VI(b) and VI(c).

The petition based on the notes described in Division VI(b) and (c) is ordered dismissed without prejudice.

Costs shall be paid one-half by plaintiff and one-half by defendants.

AFFIRMED IN PART AND REVERSED IN PART.