**In re SUNSHINE BOOKS,
LTD., Debtor.**

**Bankruptcy No. 84–00325G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 7, 1984.

Louis B. Kupperman, Dilworth, Paxson,
Kalish & Kauffman, Philadelphia, Pa., for
debtor, Sunshine Books, Ltd.

Joseph A. Dworetzky, Drinker, Biddle & Reath, Philadelphia, Pa., for Philadelphia Saving Fund Soc.

Nancy V. Alquist, Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Prentice-Hall, Inc.

Robert L. Archie, Jr., Atkinson, Myers, Archie & Wallace, Philadelphia, Pa., for John Dodson.

OPINION

EMIL F. GOLDHABER, Chief Judge:

In resolving two motions for relief from the automatic stay, the predominant issue arising under one motion is whether a bank which lent the debtor funds in conjunction with a security agreement containing a future advance clause is secured on indebtedness subsequently arising from the debtor's overdraft of its checking account in a collapsing check kiting scheme. The issue under the other motion is simply whether we should grant the requested relief. For the reasons stated herein, on the first motion we find that under the facts of this case the indebtedness on the overdraft is secured and consequently we will grant that motion for relief from the automatic stay. It follows, therefore, that relief on the second motion should also be entered.

The facts of this case are as follows:[1] Prior to the filing of an involuntary petition under chapter 7 of the Bankruptcy Code on February 1, 1984, the debtor was engaged in the retail sale of books. Several years prior to the filing of the petition, one of the movants, John Dodson ("Dodson"), loaned the debtor a sum of money, the current balance of which stands at approximately $21,000.00. The debt is secured by a mortgage on a parcel of realty on Fitzwater Street which is worth $65,000.00. The other movant, the Philadelphia Savings Fund Society ("PSFS"), holds a mortgage on the Fitzwater Street property as well as on a parcel of realty on North Broad Street which is worth $225,000.00. PSFS and Dodson hold the first and second mortgages on the Fitzwater Street property although it is unclear which of these two parties holds the first mortgage.

In addition to the mortgages, PSFS also holds a security interest in virtually all the debtor's personalty. The security agreement contains a future advance clause, also known as a "dragnet clause," which states that the debtor's personalty is encumbered to the extent of:

all liabilities (primary, secondary, direct, contingent, sole, joint or several, whether similar or dissimilar or related or unrelated) due or to become due or that may be hereafter contracted or acquired, of [Sunshine] to PSFS.

By the language of this clause the parties intended that the debtor's bank overdrafts would be secured obligations. The original indebtedness for which the security agreement was drafted is sufficiently related to the overdrafts for the purpose of securing any such overdrafts.

In May of 1983, due, in part, to the fact that checks drawn on the debtor's accounts in several banks in the mid-west and deposited in the debtor's checking account at PSFS were returned for insufficient funds, PSFS discovered that the debtor had been engaging in a scheme commonly known as check kiting. The overdrafts totaled in excess of $620,000.00.

Between May and October of 1983, the debtor sold significant amounts of its inventory and with the proceeds paid PSFS between $230,000.00 and $250,000.00 and satisfied the claims of inventory suppliers to the extent of approximately $75,000.00. During this period, the debtor continued to purchase additional merchandise. In October and November the debtor turned over its inventory to PSFS for liquidation and PSFS agreed that, in light of the knowledge and experience of the debtor's president in the field of selling books, it would employ his services in the sale of the books. The liquidation sale yielded approx-

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

imately $316,000.00 in net proceeds although the cost of the books was between $700,000.00 and $950,000.00.

The debtor has been in default on its obligation to Dodson and PSFS for several months. The indebtedness secured by PSFS's mortgage totals approximately $452,000.00. The remaining personalty is of nominal value. The debtor has no equity in any of the collateral.

The debtor's financial plight and the pendency of the liquidation of its inventory were common knowledge among most of the book companies that would have had an interest in purchasing the type of books the debtor was selling. Although notice of some aspects of the liquidation was short, time was of the essence due to the rapid decline in value that is suffered by books of the type in question. Numerous inquiries about the liquidation were made by potential buyers and bids were submitted. The liquidation price for the books was fixed by reference to one of several reputable reference books compiled by a book dealer and we find that this compilation fixed fair and reasonable values for the books. PSFS established that the collateral was liquidated in a commercially reasonable manner. Prentice-Hall, which is a creditor in opposition to the two requests for relief from the automatic stay, failed to carry its burden of proving that the debtor acted fraudulently or that PSFS's retention of the collateral or the proceeds generated by its sale would constitute unjust enrichment.

■ As stated above, the main issue before us is whether the future advance clause in PSFS's security agreement serves to secure the indebtedness on the bank overdraft. As expressed in the Uniform Commercial Code ("UCC") of Pennsylvania, "Obligations covered by a security agreement include future advances or other value whether or not the advances or value are given pursuant to commitment." 13 Pa.Cons.Stat. § 9204(c). This provision "validates the future advance interest, provided only that the obligation be covered by the security agreement." Pa.Stat. tit. 12A,

§ 9-204(5) [precursor of § 9204(c)] Advisory Committee Note. The terms of a security agreement, and presumably the provisions of a future advance clause contained therein, are generally effective according to such terms. 13 Pa.Cons.Stat. § 9201. Consequently, the determinative factor is the construction of these terms and whether the parties intended the language of the future advance clause to include bank overdrafts. We previously made the factual finding that the language of the clause evinces such an intent. Although we believe that this is determinative of the issue presented, several courts and scholars have suggested the applicability of the "relatedness rule" whereby a future advance clause will not secure a debt, although such debt was arguably within the contemplation of the parties, if that debt was not sufficiently related to the primary debt for which the security agreement was drafted. *See, e.g., Marine National Bank v. Airco, Inc.,* 389 F.Supp. 231, 234 (W.D.Pa.1975); *In Re Eshelman,* 10 U.C.C.Rep. 750, 752 (Bankr.E.D.Pa.1972); *Community Bank v. Jones,* 278 Or. 647, 566 P.2d 470, 482 (1977); *see also Kitmitto v. First Pennsylvania Bank,* 518 F.Supp. 297 (E.D.Pa. 1981). The "relatedness rule" is not literally a requirement of the UCC but rather appears as a judiciary engrafted doctrine which developed prior to the UCC. There are at least two plausible views on the orientation of this rule within Article 9 of the UCC. The first is that the rule is simply a judicially created requirement for § 9204 having little theoretical justification other than some unarticulated public policy rationale. The second is that, although the parties' intent governs the applicability of the future advance clause, the courts determine that intent by looking, in part, at the relation between the primary debt and the secondary debt. Assuming that the first view is the law in this jurisdiction,—although we do not believe that it is,—we have previously made the factual determination that the primary debt and the overdraft were sufficiently related for the future advance clause to secure the indebtedness on the overdraft.

Fearing that we would hold, as we did above, that the future advance clause by its term secures the indebtedness on the overdraft, Prentice-Hall has alleged that it is unforceable due to the contract law doctrine of illegality. This rule states that a court should not enforce a contract, if the formation of performance was, or would be, criminal, tortious or otherwise opposed to public policy. *Contractor Industries v. Zerr*, 241 Pa.Super. 92, 359 A.2d 803 (1976). Prentice-Hall contends that since the indebtedness arose through the criminal mechanism of check kiting, the future advance clause which secures that indebtedness should not be enforced. Although the check kiting scheme is patently criminal, PSFS was no more than an unwitting victim. Prentice-Hall has cited no cases in support of this curious application of the doctrine and we hold that it is not properly applied to the facts before us.

Having resolved the issues raised above which were clearly within the intended scope of litigation on relief from the automatic stay, we must now address two issues which are much less clearly within that scope.[2] In the first issue Prentice-Hall asserts on behalf of those creditors who supplied inventory to the debtor, that a constructive trust should be imposed on such inventory supplied after May of 1983.

The first basis for requesting such relief is that the debtor acted fraudulently in ordering shipments of goods while intending not to pay for them. The second basis is that unjust enrichment would result if PSFS were to retain those goods or the proceeds from the sale of said goods. *Yohe v. Yohe,* 466 Pa. 405, 353 A.2d 417 (1976); *Gee v. Eberle,* 279 Pa.Super. 101, 420 A.2d 1050 (1980).

Prentice-Hall correctly asserts that under Pennsylvania's UCC a security interest is not enforceable and does not attach unless the debtor has acquired rights in the collateral. 13 Pa.Cons.Stat. § 9203. It would have us impose a constructive trust on the collateral as if such trust arose immediately prior to the time that the debtor acquired an interest in the goods. If Prentice-Hall's theory is sound, the goods comprising the intended trust would not be subject to PSFS's security interest.

The applicability of Prentice-Hall's theory is troubling since the authority to impose a constructive trust on facts such as those presented here may have been supplanted by statutory law. *See, e.g.,* 13 Pa.Cons.Stat. § 2702; *Lavonia Manufacturing Co. v. Emery Corp.* (In Re Emery Corp.), 38 B.R. 489 (Bankr.E.D.Pa.1984).[3]

**2.** The legislative history of 11 U.S.C. § 362 reveals that at "the expedited hearing under subsection [362](e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issue such as counterclaims against the creditor which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters." S.Rep. No. 95–989, 95th Cong., 2d Sess. 55, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, at 5841. We have recently held that at a hearing on relief from the stay we generally would not hear counterclaims that did not go to the essence of the creditor's request for the relief sought *Central Penn National Bank v. Zimmerman* (*In Re Ludwig Honold Manufacturing Co.*) 35 B.R. 703, 705 (Bankr.E.D.Pa.1984). Nonetheless, in our discretion we may hear and

adjudicate these claims in particular instances on an appropriate showing for such treatment.

Prentice-Hall's request for the imposition of a constructive trust and its cause of action for PSFS's unreasonable disposition of collateral, neither of which were properly pleaded or raised, are effectively counterclaims which do not go to the essence of the creditor's request for relief from the stay. We will hear Prentice-Hall's claims simply because they are amenable to swift disposition and they are clearly without merit.

**3.** In *Emery* we outlined the history of § 2702, and noted that, prior to the passage of this section, if a buyer purchased goods on credit while insolvent, knowing that he would not be able to pay for them, he committed a fraud on the seller who, on proof of such fact, could successfully reclaim the goods. The UCC preserved the right of reclamation but eliminated the requirement of fraud. In the case at bench Prentice-Hall urges the imposition of a constructive trust on the grounds of fraud and

Assuming that § 2702 is not a bar to the requested relief we found above that Prentice-Hall failed to prove fraud and likewise failed to prove that PSFS would be unjustly enriched if it did not turn over the collateral at issue or the proceeds of the sale of such goods. Thus, a constructive trust is not properly imposed.

The next issue we must resolve is whether PSFS's disposition of the collateral was commercially reasonable. Such a question is essentially one of fact. *United States v. Conrad Publishing Co.,* 589 F.2d 949 (8th Cir.1978). Prentice-Hall posits that the burden of proof is on the secured creditor, PSFS, to prove that the sale of the collateral was commercially reasonable. Assuming that this is the proper burden of proof, we stated above that the disposition of the goods was reasonable.

The amount of the debtor's obligation to PSFS and Dodson exceeds the value of the collateral securing those debts in this chapter 7 proceeding, and, therefore, relief from the automatic stay may properly be granted under either 11 U.S.C. 362(d)(2).[4] We will accordingly enter an order to that effect.

---

unjust enrichment. The granting of this relief would effectively constitute a reclamation. Allowing the imposition of a construction trust in lieu of a request for reclamation under § 2702(b) would allow the movant to circumvent the statutory requisites of that section.

**4.** (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).