In the Matter of the ESTATE OF
Kenneth Leroy SIMPSON,
Deceased.

ONAWA STATE BANK, Appellant.

v.

LaVerne SIMPSON, Executor, Community State Bank, and Blencoe State
Bank, Appellees.

No. 86–74.

Supreme Court of Iowa.

April 15, 1987.

Bertrand E. Gionet of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellant.

Patrick J. Morrow of Morrow, Allen & Capotosto, Onawa, for appellee LaVerne Simpson.

David L. Gill, Sioux City, for appellee Community State Bank.

Judson L. Frisk, Logan, for appellee Blencoe State Bank.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This is an appeal from a district court ruling on the disposition of proceeds derived from a sale of personal property belonging to the estate of Kenneth Leroy Simpson. The sole issue is whether the district court correctly established the priority of claims by applying the "related-

ness rule" of *Freese Leasing v. Union Trust & Savings Bank*, 253 N.W.2d 921 (Iowa 1977) to limit the effects of a future advances clause in a security agreement under article nine of the Iowa Uniform Commercial Code. We conclude that the rule does apply and we therefore affirm.

The facts giving rise to this controversy may be briefly stated. Three banks filed claims against the Simpson estate based on outstanding debts purportedly secured by decedent's personal property. The banks and the estate agreed to a sale of personalty subject to court distribution of the proceeds. The sale netted $105,192.22, and $84,955.78 was distributed to appellant Onawa State Bank for its secured debts. The remaining $20,237.44, plus an unsold $5000 pivot system and the 1984 crops were distributed among appellees Community State Bank and Blencoe State Bank.

Having submitted claims for $154,820.00 based on five partially unpaid promissory notes, Onawa has appealed the court's order contending that it should receive all the money from the sale plus the unsold property. Onawa bases its claim on the priority of a perfected security agreement originally filed in 1967 and subsequently renewed every five years. That agreement, and subsequent agreements, contain a future advances clause which provides that "all money heretofore and hereafter advanced by secured party at his option to or for the account of debtor" will be secured by the decedent's farm-related personal property. After perfecting the original agreement, Onawa extended ten loans to Simpson, each evidenced by a promissory note. All but one was secured by an agreement referring to the prior security interest, thus creating a "floating lien" arrangement in which each loan was secured by personal property.

The exception to this pattern involved note number eight, executed in the original principal sum of $90,000 and secured by a real estate mortgage. Neither the note nor the mortgage referred to prior security

agreements. The district court held that note number eight was not secured by the floating lien securing the other loans, reasoning that in the *Freese Leasing* case we limited the effect of future advance clauses in real estate mortgages to loans related to the original agreement. 253 N.W.2d at 927. Given the rationale of *Freese Leasing*, and noting that other jurisdictions have applied similar relatedness rules to limit these "dragnet" clauses in article nine security agreements, the district court applied the rule in this case.

Onawa, however, asserts that application of the *Freese Leasing* rule in this case would be inappropriate because the legislature enacted Iowa Code section 554.9204(3) to require that future advances clauses be given effect.[1] Onawa argues that the "clear language of the agreement" evidences the intention by Onawa and Simpson to secure *all* future advances including advances under note eight.

We perceive the bank to be confusing effect with interpretation. The Uniform Commercial Code comment to section 554.-9204(3) reveals that its purpose was to validate future advances clauses as a useful tool in commercial finance, in the face of unnecessary hostility by courts. U.C.C. § 9–204, Comment 5, *reprinted in* Iowa Code Ann. § 554.9204 Uniform Commercial Code Comment 8, at 328–29 (West 1967). We interpret this comment to mean that courts should not invalidate or place harsh restrictions on the use of future advances clauses. However, the question in the case before us is not whether the clause is valid, but whether the loan comes within the ambit of the clause. *See id.* ("[T]his subsection validates future advance interests provided only that the obligation be covered by the security agreement."). Our attention must therefore be directed to what the parties intended to secure when signing the original security agreement, and whether the later loan fell within that intent.

█ In determining intent, we look to more than the language of the agreement.

---

1. "Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (section 554.9105, subsection 1)."

As we stated in *Freese Leasing*, we try to determine what the parties meant by what they said. *Freese Leasing*, 253 N.W.2d at 926. Though the collateral in *Freese Leasing* was real property, the same rationale applies to the case before us. We look to whether the later loan is related to or within the same class as the original debt, which allows us to infer that it was covered by the earlier agreement:

> [I]n the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet-type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligations secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefore.

*Freese Leasing*, 253 N.W.2d at 927 (quoting *Emporia Bank & Trust Co. v. Mounkes*, 214 Kan. 178, 184, 519 P.2d 618, 623 (1974)).

Other courts have applied similar rules in article nine cases, requiring "that the subsequent debt be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred." *In re Johnson*, 9 B.R. 713, 715 (Bankr.M.D.Tenn.1981); *see also Kimbell Foods v. Republic Nat'l Bank*, 401 F.Supp. 316, 325 (N.D.Tex.1975), *reversed on other grounds*, 557 F.2d 491 (5th Cir.1977), *aff'd. sub nom. United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *Marine Nat'l Bank v. Airco, Inc.*, 389 F.Supp. 231, 234 (W.D.Pa.1975); *National Bank v. Blankenship*, 177 F.Supp. 667, 673 (E.D.Ark.1959), *aff'd. sub nom. National Bank v. Gen. Mills Inc.*, 283 F.2d 574, 577 (8th Cir.1960); *In re Smith & West Constr.*, 28 B.R. 682, 683 (Bankr.D.Or.1983); *In re Blurton*, 26 B.R. 508, 510 (Bankr.W.D.Tenn.1983); *Security Bank v. First Nat'l Bank*, 263 Ark. 525, 531, 565 S.W.2d 623, 627 (1978); *Community Bank v. Jones*, 278 Or. 647, 666, 566 P.2d 470, 482 (1977). This "relatedness" rule does not defeat future advances clauses; rather, it helps determine the parties' intent by looking at the relationship between the original security agreement and the later debt. *See In re Sunshine Books Ltd.*, 41 B.R. 712, 714 (Bankr.E.D.Penn.1984).

■ Contrary to Onawa's assertion, application of the relatedness rule does not render future advances clauses meaningless. Parties can either clearly state their intent when drafting a future advances clause or refer back to the clause when making new loans in order to clarify the series of transactions. *Freese Leasing*, 253 N.W.2d at 927. However, the rule may regularly limit the scope of such clauses in contracts of adhesion. Future advances clauses are suspect under Iowa law, *Freese Leasing*, 253 N.W.2d at 927, and adhesion contracts are construed against the writer. *Farmers Trust and Sav. Bank v. Manning*, 311 N.W.2d 285, 289 (Iowa 1981). Typically, the fine print future advances clause buried in a security agreement will not convey the broad scope of its coverage to the borrower. Under such a situation, the lender should be held to a reasonable limit unless further evidence shows that the borrower understood and agreed to the broader scope. *See John Miller Supply Co. v. Western State Bank*, 55 Wis.2d 385, 393–94, 199 N.W.2d 161, 164–65 (1972) (quoting 2 G. Gilmore, *Security Interests in Personal Property* § 35.5, at 931–32 (1965)). In this way, application of the relatedness rule protects borrowers from lender overreaching and surprise. *Id.*

In summary, we conclude that the reasoning which led us to adopt the relatedness rule in connection with real estate mortgages in *Freese Leasing* compels us to apply the same rule to disputes involving future advances clauses under article nine of the Iowa Uniform Commercial Code.

■ Applying the rule to the case before us, we conclude that the loan underlying note eight was not of the "same kind and quality" nor did it "relate to the same transaction or series of transactions" as the other loans. In connection with all the other loans, no new collateral was added and the loan documents referred to prior security agreements. In granting these

loans, the bank extended money to Simpson with the understanding that the loan was secured by its continuous, perfected security interest in the personal business property.

■ The loan evidenced by promissory note number eight was different. The note did not refer to the prior agreements; instead, it was explicitly secured by real estate. The bank correctly states that failure to refer back to the original security agreement is not by itself a ground for determining whether or not advances are covered. *Maloy v. Citizens & S. Nat'l Bank*, 139 Ga.App. 798, 229 S.E.2d 678 (1976). Similarly, the addition of real property collateral is not by itself determinative. *In re Riss Tanning Corp.*, 468 F.2d 1211 (2nd Cir.1972). However, the combination of these two factors plus the noteworthy departure from other lending behavior indicates that note number eight was not related to or of the same series of transactions as the other loans.

Even though note eight was unrelated to the original security agreement, the bank could have, with "clear, supportive evidence" demonstrated that the parties intended to cover advances like that loan. *Freese Leasing*, 253 N.W.2d at 927. However, no such evidence was introduced. Onawa relied solely on the language of the security agreements. In the absence of evidence to the contrary, the district court was correct in concluding that note eight was not secured by decedent's business-related personal property.

Accordingly, we affirm the district court's determination that the remaining proceeds and unsold estate property were not subject to the bank's first-priority lien. We therefore affirm its ruling on the sale of personal property.

AFFIRMED.