**MARINE NATIONAL BANK, Plaintiff,**

v.

**AIRCO, INC., Defendant and Third-Party Plaintiff,**

v.

**CRANEWAYS, INC., a corporation, and Robert H. Beals, an Individual, Third-Party Defendants.**

Civ. A. No. 73–67 Erie.

United States District Court,
W. D. Pennsylvania.

Jan. 23, 1975.

As Amended March 7, 1975.

Vedder J. White, Erie, Pa., for plaintiff.

John T. Tierney, III, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

We have cross-motions for Summary Judgment from plaintiff and original defendant based on the same set of facts. The entry of Summary Judgment as a matter of law is proper.

On February 27, 1970, Marine National Bank (Bank) loaned $15,000 to Craneways, Inc. In May of 1970, a second loan for $15,000 was made. On October 13, 1970, Bank made another loan to Craneways, this time of $3,500 and took back a security agreement which was duly recorded. Although the $3,500 note was paid in full on November 2nd, this first security agreement provided for coverage as follows:

"Borrower agrees that the security interest created hereby in favor of Bank shall secure payment to Bank by Borrower of . . . all other obligations of Borrower to Bank, now or hereafter incurred, whether matured or unmatured, direct or contingent, and any renewals, extensions, or substitutes therefor . . ."

As security the Bank took all inventory "now or hereafter acquired, and the proceeds of disposition thereof, all accounts receivable now owned or hereafter created, and proceeds thereof."

On April 15, 1971, the Bank consolidated the two $15,000 obligations dating back to 1970, by issuing a new, consolidating note of the face amount of $30,000. Although the due date was June 1st, 1971, the note was not paid at that time.

On June 1st, 1971, the Bank lent Craneways another $28,000 to finance an order, evidenced by a separate note, and took back a security agreement containing language identical to that of the first agreement. This note, was paid on August 18th.

In June of 1971, Mr. Beals, Craneways president, who cannot now be found, notified the Bank of an agreement between Craneways and defendant Airco for the reconstruction of a crane evidenced by a purchase order for which he had already received a payment of $11,500 and for which he was to receive another $23,000 upon completion of the agreement.

On July 19, 1971, the Bank sent defendant Airco a registered letter that notified Airco that the Bank held a security agreement with Craneways covering all of Craneways' accounts receivable and inventory, and demanding payment to Bank of all moneys due Craneways. Airco does not deny that it received this letter.

In August of 1971, the crane was delivered to Airco, and Airco issued a check for $17,985 (85% of unpaid balance, remainder to be security for adequate performance) directly to Craneways. Craneways received this check and endorsed it over to the Internal Revenue Service to cover payment of delinquent taxes.

As of August 18, 1971, the balance due to the Bank from Craneways was $26,000. After selling some of Crane-

ways' inventory, the Bank still held an outstanding obligation, including accrued interest until the time of the complaint of $13,146.

The issue in this case is whether defendant Airco, at the time it made the $17,985 payment directly to Craneways, was under an obligation to make that payment to the Bank to which Craneways had assigned all of its accounts receivable.

The Pennsylvania Uniform Commercial Code, 12A P.S. § 9–502 provides as follows:

"When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignee was theretofore making collections on the collateral  . . . ."

12A P.S. § 9–318(3) provides as follows:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor must pay the assignor."

Defendant Airco does not argue against the position that, if the Bank had an account receivable as security at the time it sent the defendant the notice, and if that notice had reasonably identified the rights assigned by Craneways to the Bank, the defendant would be liable under these facts for having paid the wrong party and causing the Bank to lose some of its security. Airco argues that it is not liable for the following reasons:

I

At the time the Bank sent its notice, Airco's obligation to Craneways was not an "account" receivable of Craneways, because Airco had not received Craneways' performance which would alone obligate it to make payment. Thus, says Airco, at that time the Bank had an interest at most in a contract right within the meaning of 12A P.S. § 9–106, which differentiates between accounts and contract rights. Any notice sent before Airco actually owed Craneways money on an account was ineffective as not reasonably identifying the rights assigned.

However, according to all the evidence, Craneways and Airco only had one agreement at any relevant time, so that Airco could not have reasonably failed to understand what accounts or rights the Bank was claiming as assignee of Craneways in its July 19th letter. Furthermore, the Uniform Commercial Code specifically validates after-acquired property clauses in security agreements and a contract right, which the comment to § 9–106 indicates is a potential account, may ripen into an account and become security under an after-acquired property clause. To require secured parties to give an account debtor a second notice of an assignment after this ripening would obviously be impractical because it would expose the secured party to the risk in every case that the account debtor who promptly pays his bills would pay on the account to the original debtor before receiving the notice. The secured party has no reliable means of knowing when such a contract right becomes an account so as to send timely notice.

II

Airco argues that the security agreements in question here do not, by their terms, effectively cover any debts which were outstanding at the time it claimed Airco made the wrongful payment to Craneways. Therefore, says Airco the Bank had no right to claim an interest in any obligation running from Airco to Craneways. This argument apparently rests on the fact that, as to both of the obligations of Craneways executed on

even dates with the two security agreements, payment was promptly made. Defendant also argues that the security agreements did not by their terms cover either antecedent debt because they both failed to sufficiently identify such antecedent debts within the rule of National Bank of Eastern Arkansas v. Blankenship, 177 F.Supp. 667 (E.D.Ark.1959), aff'd. sub nom., National Bank of Eastern Arkansas v. General Mills, Inc., 283 F.2d 574, 8th Cir. Also Airco argues that the security agreements did not cover future advances, by their terms, and that if they did, the obligations represented by the April 1971 note were of such a different class than those mentioned in the agreements that they should not be covered by them under the old pre-Code cases limiting the applicability of dragnet clauses.

We find from the evidence that the loans from the Bank to Craneways were all of the same class because they all were intended to provide Craneways with working capital. Both security agreements covered antecedent debts by the language "all other liabilities of Borrower to Bank, now or hereafter incurred." Furthermore, the new obligations were signed, consolidating and extending prior loans while the first security agreement was in effect and the security agreements cover future advances in the Clause above quoted. There was always an outstanding debt because the loans made in 1970 were never paid off except by the issuance of new and consolidating notes.

We find that the general requirements laid down in the *Blankenship* case, cite supra, are satisfied by the evidence in this case. The contrary result of the *Blankenship* case may depend upon the fact that the security interest was created by a mortgage instrument covering real estate (a trust deed) and the subsequent loans were made for purposes markedly different from that of the original real estate mortgage loan. The court of appeals noted:

"Under the court's interpretation of the law, if the Bank had established the required similarity of class or close relationship of the advances to any of the original loans, such advances would have been considered secured." 283 F.2d 574, at p. 579.

A tendency to construe real estate mortgage security interests more strictly with regard to "dragnet clauses" has been noted. See Note: Future Advances Financing Under the Uniform Commercial Code: Curbing the Abuses of the Dragnet Clause. Brysh, 34 U. of Pittsburgh Law Review 691 (1973).

It is the intent of the parties to the security agreement that controls: was the indebtedness reasonably within the contemplation of the parties; and, are the transactions reasonably related? Both of these factors involve the debtor and his secured creditor, and no evidence has been produced here that there was any other intention of the parties. Airco is unable to produce any such evidence. The line of cases we have considered give no support to Airco. In any event, Airco, on receipt of the notice, had the right, under § 9–318(3) to require proof of any such assignment and the nature of the rights assigned. It did not do so.

### III

Plaintiff has also moved for summary judgment against defendant on the counterclaim asserted by defendant for the value of certain machine parts owned by defendant and left on the property of Craneways to be used in the repair and rebuilding of the crane. These parts were sold by the plaintiff when it took possession of the inventory of Craneways. We cannot, from the materials filed determine the identity or the value of any such parts left unused at Craneways' premises after the repair and delivery of the crane. In such circumstances summary judgment is inappropriate.

## ORDER

And now this 23rd day of January, 1975, in accordance with the foregoing opinion:

I. The motion of plaintiff Marine National Bank for Summary Judgment on its claim against defendant Airco, Inc. is hereby granted, and the motion of defendant for Summary Judgment in its favor on the same is hereby denied.

On or before February 3, 1975, plaintiff shall submit and serve on opposing counsel a form of order liquidating the amount claimed and accrued interest for the entry of judgment. Defendant shall file any objection thereto on or before February 10, 1975, and the court will set a time for hearing of such objection.

II. Plaintiff, Marine National Bank's Motion for Summary Judgment in its favor on defendant Airco's counterclaim is hereby denied.