**CAPITAL FUNDING SERVICES, INC., Appellant**

v.

**ZIPPO MANUFACTURING INC., Appellee**

Superior Court of Pennsylvania.

Argued Oct. 19, 2004.

Filed Jan. 4, 2005.

Reargument Denied March 18, 2005.

Frank L. Kroto, Jr., Erie, for appellant.

Brian T. Must, Pittsburgh, for appellee.

Before: ORIE MELVIN, TODD and BOWES, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Capital Funding Services, Inc., appeals from the trial court's entry of judgment in favor of Zippo Manufacturing Inc. (Zippo) in this dispute under the Uniform Commercial Code. On appeal, Appellant contends the trial court erred in concluding that Zippo was entitled to judgment as a matter of law. After careful review, we agree with the trial court and hence affirm.

¶ 2 The facts and procedural history may be summarized as follows. Beginning in 1992, Zippo had an ongoing business relationship with Barrett–Smythe, Ltd., a New York Corporation which produced designs for Zippo lighters. Zippo in turn paid royalties to Barrett–Smythe on a monthly basis based upon the prior month's sales of its products using those designs. By April 1993, however, Barrett–Smythe assigned certain of its accounts receivable to Appellant. The specific accounts were identified in a schedule of invoices from Barrett–Smythe to its obligors;[1] and one such obligor was Zippo.

---

1. Appellant described its operation as that of a small factor, which purchases accounts receivable from a client and charges a percentage fee. The client is advanced a sum by the factor based on the amount of each invoice, and the factor becomes the assignee of the account receivable. In the ordinary course, a factor provides notice of the assignment to the

Barrett–Smythe's last advance from Appellant based on the Zippo invoices was in August or September 1995.

¶ 3 Zippo, which was unaware of the assignment of its invoices, continued to make regular monthly payments to Barrett–Smythe which in turn paid those amounts to Appellant. By the fall of 1995, however, Barrett–Smythe's payments to Appellant for the Zippo invoices were not being made consistently. In letters dated January 26, 1996, on Barrett–Smythe letterhead, Zippo was given its first notice that its accounts with Barrett–Smythe had been assigned and that payment thereon should be made directly to Appellant. In February 1996 Appellant, through its counsel, also advised Zippo to make payment directly to it rather than Barrett–Smythe.

¶ 4 In January 1998, Appellant filed the instant lawsuit against Zippo claiming it was owed $310,000 on the assigned invoices and that Zippo had refused to make any payments thereon to Appellant.[2] A nonjury trial was held, at the conclusion of which the trial court directed a verdict in favor of Zippo and against Appellant. Post-trial motions were denied, and this timely appeal followed wherein Appellant presents the following question for our review:

> WHETHER THE APPELLEE, ZIPPO MANUFACTURING, AT THE TIME IT MADE PAYMENTS DIRECTLY TO BARRETT–SMYTHE, WAS UNDER AN OBLIGATION TO MAKE PAYMENTS TO CAPITAL FUNDING SERVICES TO WHICH BARRETT–

SMYTHE HAD ASSIGNED ITS ACCOUNTS RECEIVABLE.

Appellant's brief at 4.

¶ 5 We begin by noting our well-settled standard of review.

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case.

*Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1058 (Pa.Super.2003), *appeal denied*, —— Pa. ——, 858 A.2d 110 (2004). "Further, 'the standard of review for an appellate court is the same as that for a trial court.'" *Ty–Button Tie, Inc. v. Kincel and Co., Ltd.*, 814 A.2d 685, 690 (Pa.Super.2002) (citation omitted).

¶ 6 The trial court determined that Appellant could not recover sums due on any invoices prior to January 26, 1996, the date notice of the assignment was given to Zippo. Accordingly, because Appellant's complaint was based on invoices between March 1995 and August 1995, the trial court concluded Zippo was entitled to judgment in its favor. The applicable section of the Uniform Commercial Code governing rights under and notice of an assignment provided as follows.[3]

---

obligor on the account and instructs that payment should be made directly to the factor. N.T. Trial, 9/8/03, at 6–8, 17–22.

**2.** At trial, Appellant reduced its demand to $205,000. N.T. Trial, 9/9/03, at 25–26.

**3.** The assignment at issue was made prior to the recent amendments to the UCC and therefore the previous version is applicable. The substance of this particular section of the UCC is now found at 13 Pa.C.S.A. §§ 9404–9406, effective July 1, 2001.

(c) Notification to account debtor of assignment.—The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

13 Pa.C.S.A. § 9318(c)(repealed; *see now* 13 Pa.C.S.A. §§ 9404–9406)(emphasis added).

¶ 7 There is no dispute that Zippo was not given any such notice of the assignment until January 26, 1996. A representative of Appellant explained that its decision not to do so was contrary to its usual practice but it agreed to forego notification of the assignment at the insistence of Barrett–Smythe. N.T. Trial, 9/8/03, at 21–22, 71. Nevertheless, the trial court found the absence of notice to Zippo was critical to its claim under Section 9318. We agree.

¶ 8 The plain language of the statute is that an account debtor such as Zippo "is authorized to pay the assignor," in this case Barrett–Smythe, until the account debtor is given notice of the assignment. Zippo paid Barrett–Smythe for each of the relevant invoices assigned to Appellant prior to its receipt of any notification of the assignment. As the Comment to the new UCC provision on this topic makes clear, "payment to the assignor before notification ... discharges the obligation." 13 Pa.C.S.A. § 9406, Comment. The revisions to the UCC made "no change in meaning from former Section 9–318." *Id.* As such, Zippo was no longer obligated on the invoices which had been assigned to Appellant by the time it received notice of the assignment.

¶ 9 Appellant argues that this interpretation imposes a time limit on the notice requirements which are not contained in the UCC. It points out that it did file a financing statement (UCC–1)[4] with the State of New York at the time of the assignment which evidenced the agreement between Barrett–Smythe and Appellant. Appellant contends that the trial court's ruling demands that an assignee give notice to the account debtor before an assignment is made.[5] Appellant's brief at 9. Additionally, Appellant notes that Zippo maintained an ongoing business relationship with Barrett–Smythe after January 1996 and so continued to pay Barrett–Smythe directly on subsequent invoices. Appellant contends Zippo was required by the January 1996 notice to make all payments to it rather than to Barrett–Smythe, notwithstanding the fact that the invoices in question were assigned and paid in 1995. Appellant cites *Marine National Bank v. Airco, Inc.,* 389 F.Supp. 231 (W.D.Pa.1975) and *Labor Day, Inc. v. Riviera–East, Inc.,* 2000 WL 135836, 2000 U.S.Dist. LEXIS 930 (N.D.Ill.2000) in support of its contention.

¶ 10 In *Marine National Bank,* the Bank made loans to Craneways, Inc., the account debtor, in 1970 and 1971. Craneways thereafter entered into an agreement with Airco whereby Craneways would re-

---

4. *See* 19 Pa.Code § 95.101.

5. Appellant also finds significant that Zippo was paying royalties based upon the prior month's sales which did not yet mature or ripen into an account receivable until some time after the actual sales by Zippo were made. The fact that the invoices at issue were based on royalties calculated by prior sales and hence did not "ripen" immediately is simply immaterial in this case where Zippo paid the amounts in full prior to the January 1996 notice.

construct a crane for Airco for a sum of money. The Bank thereafter notified Airco that it held all of Craneways' accounts receivable and that Airco should pay the Bank directly. Airco, however, paid the balance due to Craneways. The issue presented to the court was whether Airco was obligated to make payment to the Bank rather than to Craneways under the UCC. The court determined that Craneways and Airco had only one agreement and that "Airco could not have reasonably failed to understand what accounts or rights the Bank was claiming as assignee of Craneways," 389 F.Supp. At 233, despite the fact that the account receivable had not yet "ripened" on the date of the notice.

¶ 11 Even disregarding the fact that *Marine National Bank* involves a secured loan rather than a factoring agreement, we find it is clearly distinguishable. Unlike the present case, the assignee in *Marine National Bank* gave prompt notice to the account debtor of the assignment. Furthermore, the court found the fact that the specific account receivable had not yet matured did not require the assignee to give a second notice to the account debtor. By contrast in the instant case, Zippo was not given any notice at all of the assignment until after it had made payment in full on the specific invoices assigned to Appellant.

¶ 12 We also find *Labor Day* is similarly unpersuasive. There, Labor Day was the assignor of certain accounts receivable purchased by Riviera, the assignee. After Labor Day defaulted on its agreement with Riviera, Riviera notified other Labor Day customers whose accounts were not assigned to it that they should pay Riviera directly. The court concluded that Riviera was entitled to do so based upon its agreement with Labor Day which permitted such recourse in the event of a default.

¶ 13 Importantly, the parties in *Labor Day* were the assignor and the assignee, who had an agreement between them with language which could be interpreted to permit certain remedies. Instantly, Zippo is not a party to the assignment agreement between Barrett–Smythe and Appellant. As such, Appellant does not have the same remedies available as did Riviera, and *Labor Day* is plainly inapposite.

¶ 14 The relevant facts of this case are straightforward. Appellant failed to give notice to Zippo of the assignment from Barrett–Smythe at the time it was made. Pursuant to the UCC, Zippo was thus authorized to continue making payments to Barrett–Smythe until it was given notice of such assignment. While it is true that the UCC does not provide any limitation of time for notice of an assignment to be given to an account debtor, an assignee who chooses to delay in doing so clearly assumes the risk that the account debtor will continue to pay the assignor. By the time Zippo was informed that certain of its accounts had been assigned to Appellant, those underlying obligations had been discharged. Nothing in the law requires Zippo to now make payment on those very same invoices to Appellant. Accordingly, we find no error of law or abuse of discretion in the trial court's entry of judgment in favor of Zippo.

¶ 15 Judgment affirmed.