IN RE ESTATE OF UNY KALDENBERG, deceased.

No. 51306.

(Reported in 127 N.W.2d 649)

Aᴘʀɪʟ 8, 1964.

Hammer, Matthias & Tyler, of Newton, for appellant, Earl E. Kaldenberg.

Andrew Wm. Klyn, of Pella, for executor, appellee.

Siegers & Bedell, of Newton, for Orville C. Kaldenberg, appellee.

Sɴᴇʟʟ, J.—The problem before us arises from a controversy between Earl E. Kaldenberg, appellant, and Orville C. Kalden-

berg, appellee. The protagonists are brothers, devisees and lega-
tees in the estate of their mother, Uny Kaldenberg.

This is the second time problems in the estate have been
before us. See In re Estate of Kaldenberg, 254 Iowa 1333, 121
N.W.2d 108. The first appeal involved a claim by Orville and
the amount to be charged against Orville under a specific pro-
vision in the will.

Uny Kaldenberg was the surviving widow and Orville Kal-
denberg and Earl Kaldenberg the heirs-at-law of Con Kalden-
berg who died intestate in 1952. In the probate of his estate
Orville and Earl assigned their interests in their father's estate
to their mother and consented to the closing of the estate and
discharge of the administrator. Apparently by error in listing
the property as owned in joint tenancy rather than in common,
complete vesting in Uny Kaldenberg of title to the property
involved was not accomplished.

Uny Kaldenberg died testate on May 14, 1960. Her two
sons, Orville and Earl, were the beneficiaries under her will.
Decedent's brother, Asa Niemantsverdriet, was named executor
with full power and authority to sell and convey any property
in the estate. The property included a farm occupied by Orville.

On October 10, 1960, the executor sold the farm at public
auction. Orville made the best offer. The executor then con-
tracted with Orville for the sale of the farm listed as belonging
to the estate for the sum of $34,400 payable $100 in cash at
the time and $34,300 on March 1, 1961, when conveyance by
deed and abstract showing good record title was to be completed.

To complete payment beyond his share in the estate Orville
required financing. He made arrangements for a loan and the
abstract of title was submitted for examination. Because of
some undivided interest appearing in Earl through the error
in the Con Kaldenberg estate a quitclaim deed was required to
clear the title.

On March 2, 1961, the executor filed a Report and Proposed
Settlement listing receipts and disbursements. The report pro-
posed collection from Orville of $34,300 being the balance of
the purchase price of the farm. This report, being practically
coincident with the settlement date on the farm contract, made

no mention of interest. Controversy over other matters developed, objections were filed, hearing thereon held, Findings of Fact, Conclusions of Law, Judgment Entry and Decree filed, appeal perfected and consummated. The question of interest on the farm purchase price was not an issue and was not considered.

Orville had, prior to March 1, 1961, been in possession of the farm. He continued in possession and occupancy but because of the title defect did not make the payment due March 1, 1961.

On November 30, 1960, and repeatedly thereafter Earl was requested to execute and deliver a deed meeting the title examiner's requirements. Earl at that time refused. On October 23, 1961, Earl executed the necessary deed, mailed it to his own attorney and authorized the delivery of a copy but not the original.

On January 2, 1962, the executor's attorney prepared and mailed to Earl a form of quitclaim deed, together with $1.25. On January 6, 1962, Earl executed the deed as drawn and caused its delivery. By this procedure Earl did all he was requested to do as of January 6, 1962.

By some misunderstanding or error, not chargeable to Earl, the deed was so drawn as to make the conveyance to Earl and Orville as tenants in common. It was not effective to clear the title in Orville.

On May 15, 1963, the executor filed a "Revised Proposed Settlement and Final Report and Accounting." Listed among "Anticipated Receipts and Credits" was the item "Anticipated collection of balance due from Orville Kaldenberg on farm sale $34,300.00." The report did not include any charge for interest. Earl objected because of the failure to charge interest or rent since March 1, 1961. The other items in the report are not now in controversy. The revised report was prepared and filed to conform to our holding in the first appeal.

We have summarized the statement of facts material to the issues before us but consistent with the findings of the trial court.

The issue in the trial court was the liability of Orville for the interest or rent from March 1, 1961, to the date of his

final settlement. The trial court held there was no liability for either interest or rent. Earl has appealed from that ruling.

The issues before us as tendered by appellant involve the same two problems.

I. This proceeding was in probate triable by ordinary proceedings. The trial court's findings of fact were not in controversy, they were supported by the record and are binding on us. In re Estate of Kaldenberg, supra, loc. cit. 1338 of 254 Iowa. See rule 344(f)1, Rules of Civil Procedure.

II. In the trial court appellee tendered the issue and now argues that the proceedings incident to the first report and former appeal are res judicata as to the present issues.

A plea of former adjudication is an affirmative defense. The burden was on appellee to plead and prove it. Perry v. Reeder, 235 Iowa 532, 537, 17 N.W.2d 98, and authorities discussed therein.

III. The rules under which a plea of res judicata will find support are well settled. The problem was discussed in Hoover v. Iowa State Highway Commission, 210 Iowa 1, 8, 230 N.W. 561. It was pointed out that both actions should affect the same parties, involve the same subject matter and determine the same cause of action.

In Phillips v. Cooper, 253 Iowa 359, 360, 112 N.W.2d 317, the rule is reaffirmed in these words: "The test as to whether the principle of res judicata is present, and effective, is: 1. Same parties or parties in privy. 2. Same cause of action. 3. Same issues." See also 50 C. J. S., Judgments, section 598.

The issues arising from the 1961 executor's report were not the same as those now before us. The real-estate contract for the sale to Orville provided a closing date of March 1, 1961. The executor's report obviously prepared in contemplation thereof and actually filed on March 2 made no mention of interest on the sale price. There was no reason why it should because delay was not contemplated. The real-estate contract was silent as to interest. When the report was prepared no interest was due. A finding as to the amount due as of March 1, or March 2, 1961, is not a finding that interest may not accrue thereon in the future.

The controversy that followed was on other issues.

The issues now before us were not adjudicated. The plea of res judicata is without necessary support.

■ IV. The general rule is well settled that a vendee in possession is chargeable with interest on the unpaid portion of the purchase price from the time he took possession under the contract even though the vendor's title may have been defective. Interest is allowed under such circumstances to compensate for the vendee's use of the property. Swanson v. Baldwin, 250 Iowa 342, 347, 93 N.W.2d 740, and Dee v. Collins, 235 Iowa 22, 26, 15 N.W.2d 883.

This general rule as to a vendee's liability for interest may be subject to an exception where delay in carrying out the contract is due to the vendor's wilful act. 55 Am. Jur., Vendor and Purchaser, section 348.

■ In 92 C. J. S., Vendor and Purchaser, section 526, it is said:

"Where the purchaser defaults in payment, so that the vendor is compelled to sue therefor, an allowance of interest to the vendor on the amount recovered will ordinarily be made, particularly where the contract recites that the unpaid balance is to bear interest. However, where a purchaser had reasonable ground for defending action, he should be required to pay interest only from the date of the judgment, and in the case of a doubtful title, interest may run only from the date of the judgment declaring the title valid.

"When not required by the terms of the contract, interest is awarded only in the nature of a penalty for the wrongful detention of property; hence, where the vendor, and not the purchaser, causes the delay in the payment of the purchase price, interest will not be awarded."

Our court has recognized exceptions to the general rule.

■ In Holliday v. Arthur, 241 Iowa 1193, 44 N.W.2d 717, 24 A. L. R.2d 1302, the issue was the merchantability of the title. It was held, loc. cit. 1196:

"A merchantable title, as recognized and accepted in this state, is one which a reasonably prudent man would accept in the ordinary course of business after being fully apprised of

394

the facts and the law applicable thereto. [Citations] When called upon to determine whether an abstract of title shows a merchantable title, unless the specific objections urged to the title have been definitely determined by the courts or are so clear as to not generate a doubt, the court need not pass upon the merits thereof. It is sufficient if the court finds the objections urged present a doubtful question which may submit the objector to good faith litigation regarding same. If so found, then under our acceptable standard of title the same is not merchantable."

In that case through the filing of a disclaimer during trial the title defect was removed.

After holding that the title involved had been doubtful interest was not allowed.

The Holliday opinion mentions the heavy down payment on the signing of the contract. In the case now before us the vendee was the owner of a one-half interest in the farm available for credit on the purchase price.

Morrow v. Goodell, 246 Iowa 982, 68 N.W.2d 916, was an action wherein specific performance was decreed. The appeal involved a subsequent order outlining the rights and liabilities of the parties. It was noted that throughout the litigation the vendee had been able, ready and willing to perform in accordance with his contract. The various items of interest and expense were apportioned according to the parties' respective equities and responsibilities.

■ V. The cloud on the title to be conveyed by the executor was sufficient to cause doubt as to its merchantability. The title examiner's requirement was legitimate. See quotation in Division IV, supra.

Until January 6, 1962, Earl refused to execute and deliver a deed required to perfect title to the farm. The sale of the farm and transfer of good title thereto had nothing to do with the controversy then raging between the brothers. The record discloses no legitimate reason for refusal. No useful purpose was served. The refusal was arbitrary and capricious.

The extent to which Orville may have incurred expense or loss because of delay in getting complete title does not appear.

That there was some expense and trouble is shown by the existence of the present litigation.

For the period during which delay in perfecting title is chargeable to Earl the case is clearly within the exception to the general rule discussed in Division IV, supra.

VI. The executor was the contract vendor but Earl was the one getting one half of the purchase price by distribution in the estate. To the extent that Earl caused delay in getting distribution to himself he may not complain. As between Orville and the executor Earl was the obstacle until January 9, 1962. The rules relative to a vendor's refusal to perfect title apply to Earl.

VII. On January 6, 1962, Earl executed and forwarded for delivery a quitclaim deed as demanded by the executor. The fact that the deed as drawn was inadequate was not Earl's fault. Having acted as requested he was thereafter not responsible for the delay nor subject to loss of interest on his money. The general rule as to a vendee's liability for interest applied thereafter.

VIII. The trial court held that Orville was not liable for interest on the $34,300 remainder of the purchase price. The trial court was right as to the period from March 1, 1961, to January 6, 1962. For the period from January 6, 1962, to the date of actual settlement Orville should have been charged interest at the statutory rate of five percent per annum.

Our conclusion on the question of interest makes unnecessary any discussion on the alternative claim for rent.

IX. The case is affirmed to the extent that the executor is not required to collect or account for interest prior to January 6, 1962. The case is reversed to the extent that the executor is directed to collect from or charge to Orville interest at the rate of five percent per annum from January 6, 1962, to the date of payment or settlement under the contract of purchase. The case is remanded to the district court for entry of judgment in accord herewith.

The trial court directed the taxation of costs in these proceedings to Earl E. Kaldenberg. This direction is modified and it is ordered that the costs in these proceedings in the

trial court and on appeal be charged one half to Orville C. Kaldenberg and one half to Earl E. Kaldenberg.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur.