IN RE ESTATE OF A. L. ZACH, deceased.

No. 51503.

(Reported in 131 N.W.2d 484)

November 17, 1964.

Rehearing Denied January 12, 1965.

Getscher & Getscher, of Hamburg, for objector-appellants.

Nichols & Thornell, of Sidney, for defendant-executor.

LARSON, J.—This controversy arose when the executor of the estate of A. L. Zach filed his final report which disclosed he had failed to collect or account for rents and profits on farmlands occupied by three of decedent's sons from the date of his death December 6, 1961, until the tracts were conveyed to them in April and May 1963, or to collect and account for interest upon the unpaid sales price of the land purchased by the sons. The trial court overruled objections by the administrator of the estate of one of A. L. Zach's nine heirs and her minor children, and approved the final report. Objectors appeal.

Appellants contend the court erred in ruling that this was not a landlord-tenant case, but rather a vendor-vendee matter wherein the purchasers were not chargeable with rent, and that it erred in holding no interest on the purchase price was chargeable to the sons between the date of optional exercise and the final settlement. We find no merit in the first contention, but the second must be sustained, at least in part.

The facts are not in dispute. At the time of his death decedent was engaged in separate farm partnerships with his three sons, Alfred, Clifford and Carl. Each son resided upon a designated tract owned by decedent and raised crops and livestock. Decedent's will was admitted to probate December 22, 1961. In paragraphs 3, 4 and 5 of the will testator gave to each son "the right and opportunity to purchase" the tract of land upon which he was residing, at a specified price, and provided "upon the exercise of said right" the executor was to execute and deliver to each an executor's deed. If this right was not exercised within nine months after testator's death, then the tract involved was to be sold by the executor "to the best interest of my estate."

The final report revealed these options were exercised and the final payments were received by the executor on April 2, 1963, April 9, 1963, and May 27, 1963.

At the hearing it appeared each son signed an instrument on April 18, 1962, designated "Exercise of Option". These were

delivered to the attorney for the executor, who filed them in the estate on July 25, 1962. In these instruments the designated son exercised the right given him to purchase the real estate described in the will for the sum set forth and "tenders herewith said sum to said executor."

Although it appears no actual cash was tendered at that time, the executor agreed to apply each son's share in the estate as a down payment. It appeared Clifford had made arrangements with a local bank to borrow $12,000 to settle for his tract when the deed was ready for him. The total price of his tract was $25,000. The deed was prepared January 11, 1963, and final settlement made on April 9, 1963. Alfred had made arrangements on December 12, 1962, to obtain a loan from the Travelers Insurance Company to pay his balance of $19,150 and had the money some six weeks before he received his deed dated January 11, 1963, on April 2, 1963. Carl's loan was held up pending the receipt of an administrator's deed to 20 acres inadvertently left out of the description of land optioned to Carl in decedent's will, and settlement was delayed until May 27, 1963.

The share actually applied to the purchase price of each tract was $12,850 and, although not specifically assigned to the executor, it is clear he retained those shares as payments upon these individual purchases of land.

From Exhibit "B" it appears the period from December 22, 1961, to May 17, 1962, and perhaps to July 25, 1962, was a period of liquidating these respective partnerships. There were sales of corn, hogs, cattle and grain during this period, and decedent's share was turned over to the executor. Appellee contends it is reasonable to conclude, therefore, that this period was not contemplated as one of production for the sons. The trial court so found.

I. The trial court's findings in probate matters triable by ordinary proceedings are binding upon the reviewing court if supported by any substantial evidence. In re Estate of Kaldenberg, 256 Iowa 388, 392, 127 N.W.2d 649, 651, and citations. There was substantial evidence here that testator desired his sons to purchase the tracts upon which they resided and gave them up to nine months to make an election and obtain financing,

and that he was aware of the time it would take to liquidate the existing partnerships. What the situation might have been if they had not exercised the options we need not decide now. We are satisfied the evidence sustains a finding that a landlord-tenant relationship did not exist between the parties and the executor was not required to collect and account for rents and profits under this record.

On the other hand it seems the testator did contemplate a vendor-vendee relationship which required payment within a reasonable time after the election to purchase. Nine months would seem an adequate time to arrange satisfactory financing.

■ ■ II. A vendee in possession is chargeable with interest on the unpaid portion of the purchase price from the time he takes possession under an optional provision or offer even though the vendor's title may be defective. Swanson v. Baldwin, 250 Iowa 342, 347, 93 N.W.2d 740. Interest is allowable under such circumstances to compensate for the vendee's use of the property. Dee v. Collins, 235 Iowa 22, 26, 15 N.W.2d 883, 886. Here, after the election to buy, the sons were in possession for their own use and benefit and not for that of the estate. Each son then should be charged interest at the legal five percent rate for the amount of his purchase, less any down payment or sum retained by the executor, from the date the options were filed in the estate until the date of final settlement. This is especially so unless the delay in final settlement was not attributable to them or it appears their tenders on that date were sufficient to relieve them of liability for interest. The record shows without dispute that each son's share in the estate amounted to $12,863.47 and that $12,850 of that sum was retained by the executor as the down payment on the date the tracts were purchased, although no assignment was made or filed to that effect. The trial court so found and we agree.

■ III. Did the written "Exercise of Option" filed July 25, 1962, amount to a lawful, bona fide tender such as would stop the accrual of future interest? It is the general rule that a lawful, bona fide tender does stop the accrual of further interest on sums presently due. Swanson v. Baldwin and Dee v. Collins, both supra; 55 Am. Jur., Vendor and Purchaser, section 352; 52 Am. Jur., Tender, section 39; 86 C. J. S., Tender, section 50.

While a tender to be effective generally must be absolute and unconditional (Schwab v. Roberts, 220 Iowa 958, 970, 263 N.W. 19, and citations), it is true any tender which a tenderer has a right to make is not invalid. 52 Am. Jur., Tender, section 24. We recognized this condition in In re Estate of Kaldenberg, supra, 256 Iowa 388, 393, 127 N.W.2d 649, 652. There, as here, there was a substantial down payment by a distributive share in the estate, and the issue arose as to purchaser liability for interest on the balance during a delay in final settlement due to a cloud upon the title not caused by one of the vendees. This court resolved the issue by disallowing interest during the period when the vendor's title was not merchantable or remained in doubt as to the vendee without fault. Also see on this question Holliday v. Arthur, 241 Iowa 1193, 44 N.W.2d 717, 24 A. L. R.2d 1302; Morrow v. Goodell, 246 Iowa 982, 68 N.W.2d 916.

█ Although the executor testified here that the boys told him they could make payment whenever he was ready to give them a marketable deed, and the deeds were not prepared until January 11, 1963, there is no showing that the estate could not furnish a marketable deed anytime after the "Exercise of Options" were filed. Indeed, it appears in the record that there were no encumbrances or defects in title on these tracts as disclosed by extensions to the abstracts from December 1, 1947, until April 17, 1963. Thus, a conditional tender under these circumstances would not relieve the vendees' obligation to make prompt settlement.

While a reasonable time may be allowable for furnishing and examining abstracts to these tracts, we see no basis for the extension of that time beyond July 25, 1962, and must conclude thereafter the vendees should have been charged interest on their unpaid balances to the date of final settlement. The tenders of Alfred, Clifford and Carl were not sufficient to relieve them of interest from that date, and the executor should collect and account for same in his final report. The delay in settlement by Alfred and Clifford is unexplained. The delay of Carl is explained but it does not relieve him of liability for interest. Through an oversight, some 20 acres of land upon which he resided was not listed in the option to him in the will. All the

testator's children agreed to quitclaim their interest to Carl, but a daughter, Irene Marjorie Barrett, died before executing her deed and delay occurred in getting an administrator's deed to her undivided interest. Carl had mortgaged all his lands to obtain the funds necessary to pay the $46,875 for his tracts. Funds from that loan were not forthcoming until his title was cleared on May 27, 1963. These delays did not relieve him of his obligation to pay the balance due the estate on July 25, 1962. He had possession and use of the land as owner from that date and was obligated to pay the balance or interest thereon until paid.

We, therefore, conclude the executor, James Moseley, must collect and account for interest at five percent per annum on $19,150 from Alfred Edward Zach from July 25, 1962, until the date of his final settlement April 2, 1963, this being the difference between $12,850, his applied share in his father's estate, and the amount fixed for his tract of $32,000; from Clifford Joseph Zach interest at five percent per annum from July 25, 1962, until April 8, 1963, on $12,150, the difference between his applied share of $12,850 and the sale price of $25,000; and from Carl Vernon Zach interest at five percent per annum from July 25, 1962, to the date of his final settlement May 27, 1963, on $34,025, the difference between his applied share in the estate of $12,850 and the purchase price of the tract, $46,875. This cause must, therefore, be remanded to the district court for entry of judgment in accordance herewith.

IV. At the time of submission we noted that the printing costs of appellant's brief and the record far exceeded the cost per page allowable as costs. Only one half of these charges will be taxed as costs herein. We also note the printing is not in accordance with our requirements. See rule 345, Rules of Civil Procedure.

The trial court's approval of the final report of James Moseley, executor of the estate of A. L. Zach, must be modified and the matter remanded for judgment accordingly. Costs of these proceedings shall be assessed two thirds to appellee and one third to appellant.—Reversed, modified and remanded.

All JUSTICES concur except HAYS, J., not sitting.