DECORAH STATE BANK, Appellant,

v.

Arthur M. ZIDLICKY and Gatriel M. Zidlicky, Appellees.

No. 87–1036.

Supreme Court of Iowa.

July 20, 1988.

Richard D. Zahasky, Decorah, for appellant.

Robert H. Story, Cresco, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

In this mortgage foreclosure action the plaintiff bank contends that a future advances clause served to obligate both defendants on a subsequent promissory note. The trial court held the clause was not enforceable against the defendant wife. We agree.

Defendants Arthur M. Zidlicky and Gatriel M. Zidlicky are husband and wife. In 1973, while they were engaged in farming, they signed a document entitled "Spouse's Joinder In and Guarantee of Indebtedness." The purpose was to allow either defendant to sign promissory notes binding both of them to the indebtedness. The document stated:

> This Joinder and Guarantee Agreement shall continue in full force and effect until the undersigned shall give said bank written notice to not extend any further credit . . . .

No notice not to extend further credit was ever served on the bank by either defendant.

In 1976 the defendants sold their farm and paid off all of their debts to the bank. A little over one month after selling their farm, the defendants bought a house in Decorah. To finance the house they executed a promissory note for $29,000, secured by a real estate mortgage. That mortgage contained a future advances clause and waived any right to a claim of homestead exemption.

When they moved into town the defendants opened a feed business. In 1979 Arthur Zidlicky signed a promissory note in the amount of $40,000 for the feed business. The bank made no claim that this $40,000 note was secured by the 1976 house mortgage with its dragnet clause. Instead, the note was secured by a second mortgage on the defendants' real estate, signed by both defendants. This note was later paid in full.

In 1983 Arthur executed a promissory note for over $60,000. The note was signed only by him. Gatriel testified she was unaware of it. It stated: "This note is also secured by a first mortgage dated 3–4–76 and filed 3–8–76. . . ."

In 1985 the defendants filed for bankruptcy and received a "discharge of debtor" and the following year the bank filed this mortgage foreclosure action. The bank sought to enforce both the 1976 and 1983 notes by foreclosing the mortgage on the defendants' residence on the basis of the 1976 real estate mortgage, bolstered by the 1973 spouse's joinder.

The trial court rejected the bank's claim. It found that the parties entered the joinder only in connection with their (then existing) farming operation and that it terminated in January 1976 when the farming operation was wound up. Thus its future advances clause did not apply to the 1983 note as to Gatriel who did not sign it. The court dismissed the bank's petition and the bank appeals.

■ I. Dismissal of an action does not rest in the discretion of the trial court; it turns on legal grounds and is *therefore subject to our review. State Central Bank of Keokuk v. Great River Gas Co.,* 368 N.W.2d 128, 130 (Iowa 1985). Mortgage foreclosure proceedings are equitable. *See Freese Leasing v. Union Trust & Sav. Bank,* 253 N.W.2d 921, 925 (Iowa 1977). Our review is de novo. Iowa R.App.P. 4.

■ II. Future advances clauses are valid but courts look upon them with a definite lack of enthusiasm. We have adopted the following standard for ascertaining whether a future advances clause (also known as a dragnet clause) includes a particular debt:

> [I]n the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

*Freese Leasing,* 253 N.W.2d at 927 (quoting *Emporia Bank and Trust Co. v. Mounkes,* 214 Kan. 178, 184, 519 P.2d 618, 623 (1974)). The *Freese Leasing* tests are alternative tests. *Hawkeye Bank & Trust Co. v. Michel,* 373 N.W.2d 127, 130 (Iowa 1985).

■ Dragnet clauses are valid but are not favored by the law. *Farmers Trust & Sav. Bank v. Manning,* 311 N.W.2d 285, 289 (Iowa 1981). They are thus strictly construed against the mortgagee. *Id.* The relatedness rule of *Freese Leasing* seeks out the parties' intent by comparing the original security agreement with later debt. *In re Simpson,* 403 N.W.2d 791, 793 (Iowa 1987).

We also stated in *Simpson:*

> Parties can either clearly state their intent when drafting a future advances clause or refer back to the clause when making new loans in order to clarify the series of transactions. However, the [relatedness] rule may regularly limit the scope of such clauses in contracts of adhesion. Future advances clauses are suspect under Iowa law, and adhesion contracts are construed against the writer. Typically, the fine print future advances clause buried in a security agreement will not convey the broad scope of its coverage to the borrower. Under such a situation, the lender should be held to a reasonable limit unless further evidence shows that the borrower understood and agreed to the broader scope. In this way, application of the relatedness rule protects borrowers from lender overreaching and surprise.

*Id.* (citations omitted).

Arthur apparently thought the dragnet clause of the 1976 mortgage was effective when he stated in the 1983 note that it was secured by the mortgage and was binding on both defendants. This "reference back" in making the new loan, a recognized way of disclosing the parties' intent, mitigates against a weakness in the bank's claim against defendant husband: that the 1983 note (feed business) was wholly unrelated to the 1976 mortgage transaction (purchase of a residence).

■ But it does not mitigate against the same weakness in the claim against Gatriel. She did not sign the 1983 note, did not even know of it. In an attempt to bind her the bank points back to the 1973 spouse's joinder. We think the trial court properly determined that the joinder will not serve to remedy the deficiency.

■ The general rule is that payment of the debt by the principal discharges the guarantor and terminates the obligation. *See Heinz v. Davenport Bank & Trust Co.,* 230 Iowa 546, 554, 298 N.W. 785, 789 (1941); *see also* 38 C.J.S. *Guaranty* § 77, at 1245 (1943); 38 Am.Jur.2d *Guaranty* § 78, at 1085 (1968). The question thus becomes whether these parties intended to require a written notice not to extend any further credit even after the debt owed to the bank was paid off. To discover this intent "extrinsic evidence is admissible which throws light on the situation of the parties, the antecedent negotiations, the at-

tending circumstances and the objects they were thereby striving to attain." *United Trust & Sav. Bank v. State Bank,* 170 N.W.2d 674, 677 (Iowa 1969).

We know that the defendants, who were not given copies of the 1973 instrument, signed it so they would not both have to be in town to sign a promissory note when they wanted to borrow money. They cannot be said to have intended that the 1973 joinder remain valid after they sold their farming operation and moved to town. Their purpose for the instrument no longer existed. More than this, the underlying purpose for which they were borrowing money at the time they signed the joinder, the continued operation of their farm business, was no longer applicable after they sold the farm.

We conclude that the 1973 spouse's joinder was not valid in 1983 to authorize Arthur to bind Gatriel's interest in the residence premises which are the subject of this suit. The 1976 mortgage contained a dragnet clause, but no spouse's joinder, so that defendant wife was not obligated for subsequent notes she did not sign or authorize. The 1983 note was the obligation of defendant husband, not defendant wife. The wife's homestead interest was in no way affected by the 1983 obligation.

■ III. It is well established that the homestead interests of a husband and wife cannot be split; if the interests of one are not subject to execution, neither are the interests of the other. *Merchants Mut. Bonding Co. v. Underberg,* 291 N.W.2d 19, 21 (Iowa 1980). In the present case Gatriel's homestead interest is not subject to foreclosure and that fact also prevents foreclosure of her husband's homestead interests.

The trial court properly dismissed the action to foreclose against the homestead.

IV. Neither do we find error on a separate, unrelated issue. The bank sent the defendants a written notice of past due loan stating that $18,492.04 was due on their mortgage. In response to this notice the defendants' attorney wrote the bank, tendering payment of the mortgage balance "conditioned upon their receipt of a release of the real estate mortgage on the said property." The bank rejected this tender, believing that it was impermissibly conditioned upon release of the mortgage, the effect of which would be to release the bank's claim for payment on the 1983 note.

The trial court determined that the bank had no right to withhold releasing the mortgage and hence the tender was effective. As a result it held that the bank was not entitled to any interest on the amount of the unpaid balance of the 1976 note accruing past the date of tender.

■ To be effective a tender must be absolute and unconditional. *Lyon v. Willie,* 288 N.W.2d 884, 894 (Iowa 1980). A tender is not made conditional, however, merely by a demand that the other party fulfill its obligations under the contract. *Id.* Where a condition in a tender is one which a debtor has a right to insist on, the tender made subject to that condition is valid. *Swanson v. Baldwin,* 250 Iowa 342, 345, 93 N.W.2d 740, 742 (1958). Once a bona fide tender has been made, it is the general rule that it stops the accrual of further interest on sums presently due. *In re Estate of Zach,* 257 Iowa 234, 238, 131 N.W.2d 484, 486–87 (1964).

■ We think the demand contained in the tender asked no more of the bank than to release the mortgage. This became the obligation upon payment of all that was due under the mortgage. *See* Iowa Code § 655.1 (1987). The tender was thus not conditional and the bank was not entitled to reject it. The defendants are not obligated for interest accruing beyond the date of tender.

The case must be remanded for entry of judgment in conformance with this opinion.

AFFIRMED.

All Justices concur except LARSON, J., who dissents.

LARSON, Justice (dissenting).

The key issue here is whether the 1973 agreement between Zidlickys and the bank, by which either could sign promissory notes, was still valid in 1983. The majority

says it was not; I believe it was. This agreement provided:

This Joinder and Guarantee Agreement shall continue in full force and effect until the undersigned shall give said bank written notice to not extend any further credit....

The majority holds that this agreement terminated when the Zidlickys' farming operation ceased. There is nothing in the agreement to suggest such an interpretation; it provides it would terminate on express written notice. There was not even a showing that the parties had orally agreed to other conditions for termination.

I would reverse.