2011 OK CIV APP 44

**RCB BANK, Plaintiff/Cross–Claimant/Appellant,**

v.

**VILLAS DEVELOPMENT, L.L.C., an Oklahoma Limited Liability Company; Harold W. Tompkins; Robert M. Cox; The Tompkins Family LLC, an Oklahoma Limited Liability Company; Marvin Y. Jin and Soohyun Jin; Bank of**

Commerce; **Tulsa Energy Control, Inc., a Florida Corporation; Lifestyles Stores, Inc., an Oklahoma Corporation; Mill Creek Lumber & Supply Company, an Oklahoma Corporation; and Davis Custom Painting, Inc., an Oklahoma Corporation, Defendants,**

and

**Bank of Commerce, Plaintiff/Cross–Claimant/Appellee,**

v.

**Breakers, L.L.C., an Oklahoma Limited Liability Company; Pointe Marin, L.L.C., an Oklahoma Limited Liability Company; Harold W. Tompkins, a/k/a Hal Tompkins, a/k/a Harold W. Thomkins; RCB Bank, an Oklahoma Banking Corporation; Villas Development, L.L.C., an Oklahoma Limited Liability Company; Tulsa Energy Control, Inc., a Corporation; Lifestyles Stores, Inc., a Corporation; Mill Creek Lumber & Supply Company, a Corporation; Davis Custom Painting, Inc., a Corporation; Fuller, Chlouber & Frizzell, L.L.P., an Oklahoma Limited Liability Partnership; and Mary Jane Law, in her capacity as Treasurer of Delaware County, Oklahoma, Defendants.**

No. 108,370.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 18, 2011.

---

Jeffrey D. Hassell, Gable Gotwals, Tulsa, Oklahoma, and James C. Hodges, Eller & Detrich, a Professional Corporation, Tulsa, Oklahoma, for Plaintiff/Appellant.

John J. Carwile, Carol J. Allen, Michael A. Simpson, Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, a Professional Corporation, Tulsa, Oklahoma, for Plaintiff/Appellee.

KENNETH L. BUETTNER, Judge.

¶1 Plaintiff/Appellant RCB Bank and Plaintiff/Appellee Bank of Commerce (BOC) each filed foreclosure actions involving the same property, which were consolidated in the trial court.[1] Although the District Court action involved several lienholders, the issue

---

1. RCB's May 20, 2009 Petition for Foreclosure was assigned Case No. CJ–2009–355. BOC's May 22, 2009 Petition was assigned Case No. CJ–2009–359. The trial court ordered the cases consolidated November 4, 2009. A third, related District Court action (appellate Case No. 108,-461) is a companion case to this appeal. See Okla. Sup.Ct. Order filed January 5, 2011.

on appeal is only the priority between mortgages held by the two banks. The trial court found BOC's mortgage had priority; RCB appeals that decision. BOC's mortgage, which was executed and recorded four years before RCB's, has priority over RCB's mortgages. BOC's mortgage included a future advances clause and it secured both the note given by BOC's mortgagor and one for which BOC's mortgagor was guarantor; these notes were both made before RCB's mortgages. Accordingly, we affirm the trial court's finding that BOC's mortgage was superior to RCB's.

## BOC's Mortgage

¶ 2 BOC's Petition alleged that Defendant Breakers, L.L.C. executed a $4,000,000 promissory note ("Breakers' Note 1") to BOC October 8, 2004. Breakers' Note 1 was secured by a mortgage, recorded October 27, 2004, on Lots 12–18 of the Villas at Shangri–La.[2] BOC claimed that Breakers was in default on Breakers' Note 1 and owed $469,166.72 in principal and $76,931.92 in interest, plus $84.71 per day accruing interest and $1,344.46 in accrued late fees, and it sought judgment for that amount. BOC sought an order foreclosing the mortgage and declaring it superior to other liens on the property. BOC further asserted that Defendant Harold Tompkins executed Guaranty Agreements in 2004 in which he guaranteed payment of Breakers' Note 1 and that Tompkins had defaulted.[3] BOC sought judgment

against Tompkins on the Guaranty Agreements. BOC asserted that in June 2007, Defendant Pointe Marin executed a promissory note ("Breakers' Note 2") to BOC for $801,350 and, as a condition precedent to BOC making that loan, Breakers executed a Guaranty Agreement in which it guaranteed payment of Breakers' Note 2. BOC alleged Pointe Marin and Breakers had defaulted on payment of Breakers' Note 2 and it sought judgment against Pointe Marin and Breakers for $801,350 in principal, $193,076.95 in interest, plus accruing interest from May 15, 2009. BOC contended that its mortgage also secured Breakers' Note 2, and it sought foreclosure of the mortgage based on the default on Breakers' Note 2.[4] BOC's remaining allegations are not relevant to the issues on appeal.

## RCB's Mortgages

¶ 3 In its Petition for Foreclosure, RCB alleged that on May 22, 2008, Villas[5] borrowed $1,325,000 ("Villas' Note 1") and $2,000,000 ("Villas' Note 2") under two promissory notes secured by two mortgages, recorded the same day, on Lots 12–18 of the Villas at Shangri–La and five units in Pointe Marin Town Homes, Phase II ("Property").[6] RCB alleged Villas was in default and then owed $1,292,267.70, plus $14,447.02 interest, on Villas' Note 1, and $2,000,000, plus $22,458.33 interest, on Villas' Note 2. RCB sought judgment for those amounts, as well as foreclosure on the real property securing

2. BOC asserted Breakers executed amendments to the note in 2004 and 2005, and two modifications to the mortgage were recorded in 2005 and 2007.

3. The record elsewhere indicates that Tompkins was the manager of Breakers, L.L.C. and Pointe Marin, L.L.C. Breakers conveyed all of its interest in Lots 12–18 of the Villas to Tompkins October 4, 2007, and Tompkins conveyed all of his interest to the Villas May 22, 2008.

4. BOC asserted these same claims in its July 22, 2009 Cross–Claim against RCB and all Defendants.

5. RCB asserted Defendant Villas Development, LLC (Villas) was the borrower; Defendant

Tompkins Family, LLC assigned a deposit account as security for the loans; Defendants Tompkins and Robert Cox were guarantors; Defendants Marvin and Soohyun Jin were in possession of a portion of the property; BOC possibly claimed an interest in the property; and Defendants Tulsa Energy Control, Lifestyle Stores, Mill Creek Lumber & Supply, and Davis Custom Painting, had all filed materialman's or mechanic's liens against the property.

6. On the same day, Tompkins Family LLC gave RCB an Assignment of Deposit Account, also as security for the notes, and Tompkins executed a Commercial Guaranty promising to pay on demand all sums due on the notes. Cox also executed a Commercial Guaranty for the notes the same day.

the notes and foreclosure on the deposit account securing the notes, judgments against Tompkins and Cox on the Commercial Guaranties, and an order appointing a receiver.[7]

### Summary Judgment Proceedings

¶ 4 BOC filed a Motion for Partial Summary Judgment December 10, 2009, in which

7. RCB later dismissed without prejudice its claims for foreclosure against the deposit account and against Tompkins as guarantor.

8. BOC asserted there was no dispute that: 1) on October 8, 2004, Breakers executed and delivered to BOC Breakers' Note 1, a $4,000,000 note, with 6.75% interest beginning November 8, 2004 and ending October 8, 2005, secured by Lots 12–18 of the Villas at Shangri–La, and providing that any unpaid balance is due immediately upon default; 2) as security for Breakers' Note 1, Breakers also executed a mortgage on Lots 12–18 of the Villas on the same day; 3) the mortgage provides that it is given to secure payment of the following:

(a) The Indebtedness evidenced by the following described promissory Notes(s) ("the Note," whether one or more) and any modifications, renewals or substitutions of the Note: Promissory note dated 10/08/2004, in the name of BREAKERS, L.L.C., . . .
(c) All future loans and advances and all future renewals of loans which Mortgagee may make to Mortgagor or to the Debtor identified in the Note, if different from Mortgagor (the "Debtor"); and all other debts, obligations and liabilities of every kind and character of Mortgagor or Debtor now existing, whether or not explicitly referred to, or arising in the future in favor of Mortgagee, whether direct or indirect, absolute or contingent, or originally payable to Mortgagee or any other person; and any renewals or extensions; provided, however, if the Mortgaged Property includes Mortgagor's principal dwelling or is otherwise a 1 to 4 family dwelling, the Mortgaged Property will not secure any future loan, advance, debt, obligation or liability taken or incurred principally for a personal, family or household purpose.
The mortgage also gives BOC the right to accelerate payment and exercise the power of sale or foreclosure upon default; 4) the mortgage was recorded October 27, 2004; 5) on July 29, 2005, Breakers executed an Amendment to Note 1 and Modification of Mortgage, which were recorded September 2, 2005, and which provided the note was secured by Lots 12–18 of the Villas and that the agreement was amended as follows:

Promissory note dated 10/08/2004, in the name of Breakers, L.L.C., with note number of 2422083, in the amount of $4,000,000.00, at the rate of 6.75%, with a maturity date of 10/08/2005 has been modified as follows: The Rate of 6.75% will change to the initial rate of 7.25% and then will adjust with Prime plus 1%. The maturity will be extended to August 01, 2006. All other terms remain unchanged. CONTINUING VALIDITY. The terms of the Mortgage shall remain unchanged and in full force and effect, except as expressly modified

it sought judgment that its mortgage was superior, and judgment foreclosing its mortgage and loans. BOC listed thirteen paragraphs of undisputed facts.[8] BOC contended

above. Mortgagee's consent to this Modification does not waive Mortgagee's right to require strict performance of the Mortgage as modified above nor obligate Mortgagee to agree to any future modifications. Nothing in this Modification shall be construed as satisfaction of the Promissory Note or other credit agreement secured by the Mortgage (the "Note"). The indebtedness of the Mortgagor to the Mortgagee evidenced by the Note is a continuing indebtedness and the security interest created by the Mortgage is a continuing security interest. Nothing contained in this Modification shall be interpreted to mean any outstanding balance owing under the Note is paid or any security interest created by the Mortgage is released or terminated. The Mortgagee intends to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the note, unless a party is expressly released by mortgagee in writing.
6) Breakers executed a second Amendment to Note and Modification of Mortgage May 18, 2007, which covered Lots 12–18 of the Villas and which stated it modified the October 8, 2004 note previously modified July 29, 2005; the second amendment changed the interest rate and extended the maturity date, and it included the Continuing Validity clause set out in fact no. 5; 7) during all relevant times, BOC's mortgage has remained duly and validly recorded, with the security perfected, and has not been released; 8) Breakers has failed to make the required payments under Breakers' Note 1 and has defaulted, owing $469,166.72 principal, $76,931.92 interest, and $1,344.46 late charges; 9) the 2004 mortgage secured the $4,000,000 principal in Breakers' Note 1 as well as future advances to Breakers (as quoted in fact no. 3, above); 10) December 5, 2005 Breakers executed a Guaranty Agreement in favor of BOC to induce BOC to extend credit to Pointe Marin, by which Breakers guaranteed all of Pointe Marin's debts to BOC; the guaranty stated in part that Breakers:

guarantees to the Lender that Debtor will fully and promptly pay or otherwise discharge indebtedness . . . upon which Debtor now is or may later, from time to time, become obligated to Lender . . . . regardless of the nature and form of indebtedness and whether due or not due; (2) agrees, . . . to liquidate any security to pay on demand all sums due . . . ;
11) on August 10, 2006, Breakers executed a Liability Company Guaranty and Pledging Resolution, which provided all assets of Breakers were intended to serve as collateral for debts incurred by Pointe Marin; 12) on June 4, 2007, Pointe Marin executed Breakers' Note 2 to BOC for $801,350, which provided for interest of

that the undisputed facts showed that its mortgage had been recorded and effective since 2004 and that it was therefore superior to the other liens against the property. BOC claimed there was no dispute that Breakers was in default on Breakers' Note 1 and was liable as guarantor on Breakers' Note 2, and that both debts were secured by its mortgage on Lots 12–18 of the Villas.

8.75% and included an acceleration clause and an attorney fees clause; and 13) Pointe Marin defaulted on Breakers' Note 2, owing $801,350 in principal and $193,076.95 in interest, plus interest accruing and attorney fees.

9. RCB sought summary judgment against BOC, Villas, Cox, Tulsa Energy Control (TEC), Mill Creek, and Davis Custom Painting. RCB sought default judgment against Life Styles because it failed to file an Answer.

10. RCB disputed fact no. 7 by alleging that Breakers' Note 1 was paid off and had no balance remaining. RCB disputed fact no. 8, asserting Breakers could not have defaulted on Breakers' Note 1 because it was paid off. RCB's dispute of fact no. 10 was that BOC's characterization of Breakers' Guaranty was a conclusory statement rather than a fact statement. RCB disputed fact no. 11 for the same reason, asserting BOC's characterization of the Resolutions was conclusory.

11. RCB contended there was no dispute that: 1) Villas executed a note for $1,325,000 to RCB May 22, 2008; 2) concurrently, Villas executed a mortgage to secure the note which covered property including Lots 12–18 of the Villas at Shangri–La, which was recorded the same day; 3) also on May 22, 2008, Villas executed a second mortgage in favor of RCB covering the same property, but RCB had since released the mortgage on Lot 18 of the Villas and on units in the Pointe Marin Town Homes, and in some cases had taken substitute collateral; 4) also on May 22, 2008, Cox executed a Commercial Guaranty in which he guaranteed payment of the Villas' note to RCB; 5) "various events of default" had occurred under RCB's loans; 6) as a result, RCB had elected to declare the entire balance of its note due and payable; 7) RCB had complied with the terms of the note and all required notices had been given; 8) $1,322,267.70 principal and $14,447.02 interest was currently due and owing on RCB's note; 9) TEC filed a materialman's or mechanic's lien on the property April 23, 2009, which was junior to RCB's mortgages because the material or labor was provided after RCB's mortgages were recorded; 10) Mill Creek filed a materialman's or mechanic's lien against the property May 8, 2009, which was junior to RCB's mortgages because the material or labor was provided after RCB's mortgages were recorded; 11) Davis filed a materialman's or me-

¶ 5 RCB filed its Response to the Motion for Partial Summary Judgment and its Cross–Motion for Summary Judgment and Motion for Default Judgment December 28, 2009.[9] RCB specifically disputed BOC's facts 7, 8, 10, and 11.[10] RCB further disputed all of BOC's statements of fact which conflicted with RCB's 25 statements of undisputed material facts.[11] RCB argued that

chanic's lien against the property May 11, 2009, which was junior to RCB's mortgages because the material or labor was provided after RCB's mortgages were recorded; 12) Lifestyles filed a materialman's or mechanic's lien against the property April 29, 2009, which was junior to RCB's mortgages because the material or labor was provided after RCB's mortgages were recorded; 13) BOC claims that Breakers executed a note and mortgage to it for a $4,000,000 loan October 8, 2004, also covering Lots 12–18 of the Villas at Shangri–La, which mortgage was recorded October 27, 2004; 14) Breakers executed a modification of mortgage July 29, 2005 and recorded September 2, 2005; 15) Breakers executed a second modification of mortgage May 18, 2007, recorded May 21, 2007; 16) the first and second modifications applied specifically to the Breakers note and referenced no other note and no other entity's debt; 17) between the first and second modifications, Breakers executed a Guaranty Agreement to BOC in December 2005, which related to the Pointe Marin debt and "(t)he 2005 Breakers Guaranty includes a space to write in specific promissory notes to be guaranteed, but such space is blank in the 2005 Breakers Guaranty"; 18) Breakers also executed a Limited Liability Company Guaranty and Resolution in August 2006; 19) 18 months after Breakers executed the Guaranty Agreement, Pointe Marin signed its note to BOC for $801,350, at the same time, BOC required Tompkins to provide a guaranty and a mortgage on separate property to secure the Pointe Marin debt; 20) June 2, 2007, Pointe Marin also executed a Limited Liability Company Borrowing Agreement and a Limited Liability Company Guaranty and Pledging Resolution; 21) at the time of the extension of the Pointe Marin note, BOC did not obtain a Guaranty Agreement from Breakers for the Pointe Marin note; 22) previously, when BOC needed to modify the Breakers mortgage it required Breakers to execute a Modification of Mortgage, but no modification was required for the execution of Breakers' Note 2; 23) BOC alleged that Pointe Marin defaulted on Breakers' Note 2 and that the 2005 Breakers Guaranty and 2006 Breakers Resolution guaranteed payment of Breakers' Note 2; 24) BOC claimed that its mortgage secured Breakers' alleged obligations under the 2005 Breakers Guaranty and 2006 Breakers Resolution, by which BOC claims Breakers guaranteed payment of Note 2 "all pursuant to the dragnet clause in the

Breakers' Note 1 was paid off in 2005 and therefore BOC's mortgage expired before Breakers' Note 2 was executed. RCB contended that the Second Modification of BOC's mortgage was executed over two years after BOC's mortgage expired and that the modification was therefore ineffective to renew or extend the note or the mortgage. RCB further asserted BOC was not entitled to priority under the "dragnet clause" in BOC's mortgage, also called a "future advances clause," which provides that the mortgage secured all future debts Breakers owed to BOC.

¶ 6 BOC filed a Response to RCB's Cross–Motion for Summary Judgment January 20, 2010.[12] BOC disputed RCB's statement 16 "to the extent it implies a legal necessity to include Note 2 or Pointe Marin in the Mortgage and Note Modifications" to allow BOC's mortgage to secure payment of Breakers' Note 2. BOC asserted its security interest for payment of Breakers' Note 2 attached pursuant to Breakers' Guaranty and the future advance clause in its mortgage. BOC also disputed RCB's fact 17, contending that there was no reason for it to list every note subject to Breakers' Guaranty because it was a continuing guaranty not limited to specifically named notes. BOC disputed RCB's 18th statement of fact, asserting it implied "a legal conclusion that an LLC cannot properly execute a Resolution ratifying its prior conduct." BOC disputed statement of fact 21 to the extent it implied it was legally necessary for Breakers' Note 2 and Breakers' Guaranty to be executed simultaneously. BOC disputed fact 22, claiming it implied a legal conclusion that a modification of mortgage was required for BOC's mortgage to secure

Breakers' Note 2. BOC disputed fact 25 to the extent it implied "Breakers could not contract to guaranty Pointe Marin's debt prior to Pointe Marin's registration as an LLC with the Secretary of State." Finally, BOC disputed RCB's 26th statement of fact that Breakers' Note 1 was paid off May 5, 2006. BOC asserted $1,500,000 of the debt was sold to Canadian State Bank and that amount was paid in full; BOC asserted that the full $4,000,000 was not paid in full and that more than $500,000 in principal and interest were currently owing on Breakers' Note 1.

¶ 7 Following a hearing, the trial court issued its Journal Entry of Judgment May 4, 2010. The trial court granted BOC's Motion for Partial Summary Judgment in its entirety. The court granted in part and denied in part RCB's Cross–Motion for Summary Judgment and Motion for Default Judgment. As to the dispute between the banks, the trial court found that BOC's mortgage from Breakers secured both Breakers' Note 1 and Breakers' Note 2. The court further found that BOC's 2004 mortgage had priority over RCB's 2008 mortgages and over all other liens on the property except for an ad valorem tax lien. The court granted judgment to BOC against Breakers for $469,166.72 in principal, $76,931.92 in accrued interest, $1,344.46 in late fees, $1,586.44 in costs, accruing interest of $84.71 per day, and attorney fees to be decided. The court granted judgment to BOC against Pointe Marin and Breakers for $801,350 in principal, $193,076.95 in accrued interest and fees, $1,344.46 in late fees, $1,586.44 in costs, accruing interest of $194.77 per day, and attorney fees allowed by law.[13]

---

Breakers Mortgage"; 25) Oklahoma Secretary of State records show Pointe Marin, L.L.C. was formed June 21, 2006; 26) and the loan history for Note 1 reflects it was taken October 8, 2004, that payments were made from time to time and it was paid off May 5, 2006.

**12.** As to RCB's statements of facts, BOC asserted facts 1–12 required no response because they did not relate to BOC, but it disputed those statements to the extent they alleged RCB's mortgage was superior to BOC's. BOC did not dispute statements 13–15, 19, 20, 23, and 24.

**13.** The court also awarded RCB judgment against Villas and Cox, as guarantor, for

$1,322,267.70 in principal, $14,447.02 in accrued interest, $367.94 per day in accruing interest, and costs and fees as allowed by law. The trial court declared BOC's and RCB's mortgages foreclosed. The court directed the sheriff to first accept bids for Lot 18 of the Villas at Shangri-La, then bids for Lot 17, then for Lot 16, and then for Lots 12–15. The court directed that the highest bids would not result in a final sale except as to Lot 18. The court directed the sheriff to then accept bids for Lots 12–17 combined, and determine which combination of bids brought the highest value and declare the property sold to the highest bidders. The court directed that the proceeds for Lot 18 would be applied first to payment of costs of the sale and

¶ 8 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

¶ 9 In its Petition In Error, RCB contends the trial court erred in finding that Breakers' Note 1 was not fully paid and in finding that BOC's mortgage was not released or extinguished by Note 1 being paid. RCB also contends that the trial court erred in finding that BOC's mortgage secured Breakers' Note 2 pursuant to the future advances clause in the mortgage.

¶ 10 We first address RCB's claim that Breakers' Note 1 was paid off, causing

BOC's mortgage to expire. RCB argued that Breakers' Note 1 was fully paid May 5, 2006, and that BOC was required by law to release the mortgage at that time, citing 46 O.S.2001 § 15. That section provides for a penalty against a mortgagee who refuses to release a mortgage upon the mortgagor's request within 50 days of the debt secured by the mortgage being fully paid. Any claim for such a penalty would be Breakers' to make, not RCB's. Nothing in the record here suggests that Breakers asked to have the mortgage released, likely because the mortgage, by its express terms, was a continuing mortgage.[14] A mortgage which provides that it secures future advances or debts of any kind is considered legal and valid in Oklahoma. *First Natl. Bank in Dallas v. Rozelle,* 493 F.2d 1196, 1201 (10th Cir.1974); *Johnston v. Amer. Fin. Corp.,* 1938 OK 195, 79 P.2d 242, 246, 182 Okla. 567. A mortgage securing future advances is considered "open-ended" and as such, until a release is recorded, it continues even after the original debt has been paid. *Central Production Credit Assoc. v. Page,* 268 S.C. 1, 231 S.E.2d 210, 214 (1977). RCB's contention that "the mort-

---

this litigation, then to BOC to apply to its judgment, and the remainder to be held by the court clerk pending further order. The court held that the proceeds of the combined bidding on the property were to be paid first to BOC to apply to its judgment, then to RCB to apply to its judgment, then to Mill Creek to pay two liens it held, and the remainder to be held pending further order.

14. As noted above, BOC's 2004 mortgage included the following clause providing that the security extended to:

*All future loans and advances and all future renewals of loans* which Mortgagee may make to Mortgagor or to the Debtor identified in the Note, if different from Mortgagor (the "Debtor"); and *all other debts, obligations and liabilities of every kind and character* of Mortgagor or Debtor *now existing, whether or not explicitly referred to, or arising in the future in favor of Mortgagee, whether direct or indirect, absolute or contingent, or originally payable to Mortgagee or any other person; and any renewals or extensions;* provided, however, if the Mortgaged Property includes Mortgagor's principal dwelling or is otherwise a 1 to 4 family dwelling, the Mortgaged Property will not secure any future loan, advance, debt, obligation or liability taken or incurred principally for a personal, family or household purpose.
(Emphasis added.)

Also as noted above, the two recorded modifications of BOC's mortgage included the following clause:

CONTINUING VALIDITY. The terms of the Mortgage shall remain unchanged and in full force and effect, except as expressly modified above. Mortgagee's consent to this Modification does not waive Mortgagee's right to require strict performance of the Mortgage as modified above nor obligate Mortgagee to agree to any future modifications. *Nothing in this Modification shall be construed as satisfaction of the Promissory Note or other credit agreement secured by the Mortgage (the "Note"). The indebtedness of the Mortgagor to the Mortgagee evidenced by the Note is a continuing indebtedness and the security interest created by the Mortgage is a continuing security interest. Nothing contained in this Modification shall be interpreted to mean any outstanding balance owing under the Note is paid or any security interest created by the Mortgage is released or terminated.* The Mortgagee intends to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the note, unless a party is expressly released by mortgagee in writing.
(Emphasis added.)

gage follows the note" rule means that when the note was paid the mortgage ended, is not relevant here because the mortgage expressed the parties' intent that the mortgage continue to secure future advances. See *In re Mancle*, 314 B.R. 397 (E.D.Ark.2004).

¶ 11 In *Rozelle, supra*, after the bank sought foreclosure, the mortgagor countersued for release of the mortgage, citing 46 O.S. § 15. The bank responded that it was not obligated to release the mortgage because of a future advances clause. The Tenth Circuit Court of Appeals held that the future advances clause in the mortgage showed the parties' intent for the mortgage to secure later loans in addition to the note given at the time of the mortgage. 493 F.2d at 1202. Accordingly, whether Breakers' Note 1 was fully paid at some previous point is not a question of fact material to the issues in this case. The record shows that BOC and Breakers amended the note and modified the mortgage after the date that RCB claims it was paid and should have been released. BOC's mortgage did not expire and served as security for later advances or loans BOC made to Breakers.

■ ¶ 12 RCB also claims the trial court erred in finding Breakers was in default on its Note 1 and in awarding judgment therefor to BOC. The record includes BOC's President, Jan Miller's December 9, 2009 affidavit, in which she averred that Breakers was in default on Note 1 and then owed $469,166.72 in principal, plus $76,931.92 in interest and fees accrued through May 15, 2009, plus accruing interest. RCB's exhibit purporting to show that Breakers' Note 1 was paid off is a computer screenshot dated May 5, 2006, and states "participation sold to Canadian State Bank." BOC asserted RCB's exhibit was not authenticated, and that the exhibit at most shows that a portion of Note 1 was paid off by being sold to another bank. RCB has not presented evidence creating a question of fact on the amount in default on Breakers' Note 1 at the time of the foreclosure proceedings.

■ ¶ 13 We next consider RCB's arguments related to Breakers' Note 2. As explained above, Breakers' Note 2 is a note given by Pointe Marin to BOC. When Pointe Marin defaulted, BOC sought to foreclose on the mortgage based on Breakers' guaranty of Pointe Marin's debts. RCB contends that the future advances clause should not include Breakers' Note 2 because Breakers was not the borrower but the guarantor. RCB contends that Breakers' Note 2 is not of the same class as the other note secured by BOC's mortgage and was not intended by the parties to be secured by BOC's mortgage. However, even the out of state authority on which RCB relies for this claim notes that the parties may express intent for a mortgage to secure debts of a different kind or character than the original debt secured. See *Decorah State Bank v. Zidlicky*, 426 N.W.2d 388, 390 (Iowa 1988), which quoted the rule in Iowa that:

> *[I]n the absence of clear, supportive evidence of a contrary intention* a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor.

*Id.*, quoting *Freese Leasing v. Union Trust & Sav. Bank*, 253 N.W.2d 921, 927 (Iowa 1977) (emphasis added). The future advances clause, quoted above, in BOC's mortgage is almost without limit and expressly provides that the mortgage secures debts of every kind and character.

¶ 14 In *Rozelle, supra*, the Tenth Circuit Court of Appeals considered the effect of a future advances clause of similar breadth. In that case, the borrower mortgaged his interest in oil and gas leaseholds and personal property to secure a loan of $40,000 and the mortgage included provisions securing "all loans and advances which Mortgagee may hereinafter make to Mortgagor" and "all other and additional debts ... of every kind and character of Mortgagor now or hereinafter existing in favor of Mortgagee." The appellate court held that the clauses were broad enough to secure subsequent loans to the mortgagor to finance the mortgagor's ranching operations on other land secured by a

mortgage thereon. The court declared that the "future advance" and "omnibus" provisions were both clear and broad, and the court recognized that an agreement to secure future advances would necessarily intend to secure sums that were indefinite and uncertain at the time the mortgage was executed. 493 F.2d at 1201–1202. The future advances clause is this case, which states in part that it extends to "all other debts, obligations and liabilities of every kind and character" plainly shows the parties' intent to include different kinds and qualities of debts.

¶ 15 A future advances clause similar to the one in BOC's mortgage has been held to secure debts on which the mortgagor is a guarantor or surety. See *Hepburn v. Tri-County Bank,* 842 N.E.2d 378, 385 (Ind.App. 2006) (where the court held that future advances or dragnet "clause could not have been written more broadly, as it encompasses any future obligation [borrower] may have to the Bank. Accordingly, the dragnet clauses attach the mortgages to the later executed guaranty."); *C & S DeKalb Bank v. Hicks,* 232 Ga. 244, 206 S.E.2d 22 (1974).

¶ 16 We agree with the trial court that the future advances clause in this case is written broadly enough to include a debt which Breakers was obligated to pay as a guarantor. The parties to the mortgage expressed their intent that the mortgage secure all debts of every kind and character on which Breakers was liable to BOC. Breakers later guaranteed payment of Pointe Marin's note to BOC. The plain language of the future advances clause of the mortgage embraces amounts which Breakers owed BOC under the Guaranty. Accordingly, BOC was entitled to judgment as a matter of law foreclosing its mortgage to satisfy the default of Breakers' Note 2.

¶ 17 The summary judgment record shows no dispute of facts material to the issues presented. AFFIRMED.

MITCHELL, P.J., and JOPLIN, J., concur.